David G. Liston
Ronald Abramson
Anthony M. Capozzolo
Ari J. Jaffess
**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 826-7001

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ART DISTRIBUTION INC. d/b/a NTV AMERICA and KOMANDA LLC, | Case No.: |
| Plaintiffs, | |
| v. | |
| ARIEL IMPEX LP; PINEBROOK IMPEX LP; and JOHN DOES 1 through 10, | **COMPLAINT** |
| Defendants. | |

Plaintiffs Art Distribution Inc. d/b/a NTV America and Komanda LLC (together referred to herein as the "Plaintiffs"), by and through their attorneys, Lewis Baach Kaufmann Middlemiss pllc, submit this Complaint for Copyright Infringement, Secondary Copyright Infringement, Trademark Infringement, False Advertising, and Unlawful Circumvention, and respectfully allege as follows:

**NATURE OF THE ACTION**

1.      This action seeks to restrain the Defendants herein from unauthorized streaming, transmission, broadcast, and distribution of valuable foreign language television programming through various methods, including without limitation the Internet, mobile applications, and

1

Internet Protocol television ("IPTV") streaming platforms, such as the Roku platform ("Roku"), and to seek monetary compensation with respect thereto.

## THE PARTIES

2.      Plaintiff Art Distribution Inc. d/b/a NTV America ("NTV America") is a company organized under the laws of New Jersey. Its principal place of business is 1 Marine Road, Suite 305, North Bergen, New Jersey 07047.

3.      Plaintiff Komanda LLC ("Komanda") is a limited liability company organized under the laws of the Russian Federation. Its principal place of business is 129515 Russia, Moscow, Akademik Korolev str., 13, building 1, office 62.

4.      Defendant Ariel Impex LP ("Ariel Impex") is a company organized and existing under the laws of Great Britain (UK), with its registered head office at 12 South Bridge, Suite 1, Edinburgh, Scotland EH1 1DD, Great Britain (UK). Ariel Impex is identified on TVTeka.com as the management company responsible for the Russian language TV programming service known as "TVTeka." Plaintiffs have been unable to otherwise ascertain the owner and operator of TVTeka.com, as the identity of the registrant of the domain is shielded through WHOISGUARD, Inc., a company located in Panama.

5.      Defendant Pinebrook Impex LP ("Pinebrook Impex") is a company organized and existing under the laws of Great Britain (UK), with its registered head of office also located at 12 South Bridge, Suite 1, Edinburgh, Scotland EH1 1DD, Great Britain (UK). Pinebrook Impex is identified on RUTVClub.com as the management company responsible for the Russian language TV programming service known as "RUTVClub." Plaintiffs have been unable to otherwise ascertain the owner and operator of RUTVClub.com, as the identity of the registrant of the

domain is shielded through Privacy Protection Service INC d/b/a PrivacyProtect.org, a company located in Australia.

6.      Plaintiffs do not know the true name and capacity of Defendants John Does 1 -10 and therefore sue these defendants by such fictitious name. Plaintiffs will amend the Complaint to allege the true name and capacity of John Does 1-10 when ascertained. Upon information and belief, Defendants John Does 1-10 are individuals or entities that own, do business as, or act in concert with, or at the direction of, Ariel Impex and Pinebrook Impex to distribute infringing content as TVTeka and RUTVClub, respectively, through the Internet, mobile applications, and various IPTV streaming platforms, including but not limited to Roku.

## JURISDICTION AND VENUE

7.      The Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 with respect to Plaintiffs' federal statutory claims and 28 U.S.C. § 1367 with respect to Plaintiffs' state law claims.

8.      Personal jurisdiction over Defendants is proper because they purposefully directed their conduct towards, and purposefully availed themselves of, the privileges of conducting business activities within this judicial district by, among other things, streaming, broadcasting, or otherwise distributing certain Copyrighted Content (defined below) and the NTV Marks (defined below) to promote, market, or sell their services to consumers in this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(a).

## BACKGROUND FACTS

**A.   Introduction**

10.     Each Plaintiff owns the copyrights or is an exclusive licensee to certain Russian language television programs originating in and protected by the laws of the Russian Federation. Plaintiffs can proceed as copyright owners for purposes of the U.S. Copyright Act, which implements the Berne Convention for the Protection of Literary and Artistic Works (the "Berne Convention") and other applicable international conventions, to which the Russian Federation is a contracting state. Among the bundle of rights afforded to Plaintiffs as copyright owners under United States copyright law are the exclusive rights to "reproduce the copyrighted work," "distribute copies … of the copyrighted work to the public," "perform the copyrighted work publicly," and "display the copyrighted work publicly." 17 U.S.C. § 106. This includes the exclusive right "to transmit or otherwise communicate a performance or display of" Plaintiffs' copyrighted television programs "to the public by means of any device or process whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times." *Id.* § 101.

11.     The Russian language programs, which are originally broadcast in the Russian Federation on two popular television channels, Channel One and NTV, have a large audience not only in the Russian Federation, but internationally, as well. To meet the international demand for these Russian language programs, and make the programs available to their respective viewers, Plaintiffs authorize third parties that they find to be suitable licensees to stream, broadcast, or distribute the content to consumers in, among other places, the United States.

12.     Like the above-mentioned authorized third parties, Ariel Impex, along with any other John Does that own, operate, or do business as TVTeka (collectively, the "TVTeka

4

Defendants"), and Pinebrook Impex, along with any other John Does that own, operate, or do business as RUTVClub.com (collectively, the "RUTVClub Defendants," and together with the TVTeka Defendants, the "Infringing Defendants"), offer their paying subscribers access to Plaintiffs' Russian language television programming through a variety of platforms, including the Internet, mobile applications, and IPTV streaming platforms.

13.   However, unlike the authorized third parties — and contrary to the representations made on TVTeka.com and RUTVClub.com — the Infringing Defendants do not have a valid license or authorization to distribute the copyrighted programs.

14.   The Infringing Defendants never obtained permission from Plaintiffs to distribute the content, nor could they have obtained such permission from any other party. But this has not stopped the Infringing Defendants from illegally streaming, broadcasting, and otherwise distributing Plaintiffs' copyrighted programs. Upon information and belief, the Infringing Defendants instead acquire, without permission, the encrypted signals of Channel One and NTV and transmit those signals to their servers, which in turn distribute the channels' programs, including Plaintiffs' copyrighted programs. Such distribution is effected through the Infringing Defendants' websites, TVTeka.com and RUTVClub.com; gateway websites such as vox-ru.com; the Infringing Defendants' mobile applications; and their channels on IPTV streaming platforms, such as their numerous Roku channels.

15.   The Infringing Defendants have given no indication whatsoever that they intend to put a stop to their infringing conduct. Indeed, they have continued to stream, broadcast, or otherwise distribute Plaintiffs' copyrighted programs after Plaintiffs submitted Digital Millennium Copyright Act ("DMCA") takedown notices to Roku — and even after Roku disabled the Infringing Defendants' channels. Undeterred, the Infringing Defendants created, and

continue to create, a number of recidivist Roku channels; continue to stream Plaintiffs' programs on their websites and other IPTV streaming platforms; and encourage their subscribers to install channels outside of the approved Roku platform through a misuse of Roku's "developer mode," knowing full well that such misuse circumvents Roku's content protections that control access to copyrighted works.

16. Despite their infringing activity, the Infringing Defendants have consistently held themselves out as authorized distributors of Plaintiffs' Russian language programs. Indeed, the TVTeka Defendants falsely state on their website that they enter into contracts with the programs' copyright owners and the RUTVClub Defendants state that they collaborate with Russian companies and providers.

17. Further, the Infringing Defendants use the registered marks for which NTV America holds an exclusive license without authorization to advertise their services.

18. The Infringing Defendants' actions run afoul of Plaintiffs' rights in the Russian language programs and violate the Copyright and Lanham Acts. Unless enjoined by this Court, the Infringing Defendants' actions will cause irreparable harm by, among other things, interfering with Plaintiffs' ability to negotiate legitimate license agreements with third parties, reducing Plaintiffs' control over the distribution of their copyrighted content, and undermining Plaintiffs' ability to negotiate and implement quality controls in the dissemination of their Russian language programs.

19. Plaintiffs respectfully request that the Court enjoin the Infringing Defendants' unlawful conduct as well as award Plaintiffs damages and profits arising out of the Infringing Defendants' unlawful conduct in addition to any and all other relief authorized by statute or at common law, including but not limited to an award of costs and attorneys' fees.

**B.**      **Plaintiffs and the Copyrighted Works**

20.      NTV America holds an exclusive license in the United States to the copyrights of original television programs that are shown on Russian language television, including most of the content that is shown on the Russian television network, NTV. The programs in question are produced by the Russian television network, NTV, and exclusively licensed to its affiliate, NTV America, to reproduce, distribute, publicly perform, and display the programs in the United States. Examples of Russian television programs to which NTV America is the exclusive licensee in the United States include, among others, all episodes of those programs distributed under the following names:[1]

- Detektiv Pasečnik (Детектив Пасечник);
- Mesto vstreči (Место встречи);
- Vozvraŝenie Muhtara (Возвращение Мухтара);
- Segodnja (Сегодня);
- Govorim I Pokazyvayem (Говорим И Показываем);
- Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей);
- Uchitel' v zakone (Учитель в законе); and
- Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие) (collectively, the "NTV Copyrighted Content").

21.      Komanda is the sole worldwide copyright owner for certain original television programs that are shown on Russian language television, including content that is shown on the Russian television network, Channel One. The programs in question are developed in Russia by a producer that transfers and assigns to Komanda exclusive rights — including the right to reproduce, distribute, publicly perform, and display. Examples of Russian television programs to which Komanda has been assigned the copyrights include, among others, many episodes of those programs distributed under the following names:

- Davai Pogenimsya (Давай поженимся);

---

[1] Each program's name has been listed in both Latin characters and Cyrillic.

- Modny Prigovor (Модный приговор);
- Segodnya Vecherom (Сегодня вечером);
- Kontrolnaja Zakupka (Контрольная закупка);
- Luchshe Vsekh (Лучше всех);
- Idealny Remont (Идеальный ремонт);
- Fidel' Kastro, Kuba-lyubov' moya  (Фидель Кастро, Куба-любовь моя);
- Bez strakhovki (Без страховки);
- Na noch' glyadya (На ночь глядя); and
- Prozharka (Прожарка) (collectively, the "Komanda Copyrighted Content," and together with NTV Copyrighted Content, the "Copyrighted Content").

22.     Plaintiffs' Copyrighted Content is among some of the most popular Russian language programming and is broadcast on the Russian television networks NTV and Channel One. Furthermore, the popularity of the Copyrighted Content extends beyond the Russian Federation; due to its popularity in the United States, it is also broadcast and restreamed across the United States by NTV America and/or certain third parties authorized by NTV America and Komanda, such as DirectTV or Cablevision. Because they have invested (and continue to invest) substantial resources and efforts each year to support the development, production, and broadcast of the Copyrighted Content, Plaintiffs provide authorization, permission, or consent to broadcast or distribute the content only through license agreements with third parties that Plaintiffs find to be suitable licensees, which, depending on the terms of the license, may allow the Copyrighted Content to be broadcast over the Internet, mobile applications, and other IPTV streaming platforms, including Roku.

## C.     Plaintiffs' Copyrighted Content is Protected by the Copyright Act

23.     Plaintiffs' Copyrighted Content is not a United States work, but originates and is first broadcast in the Russian Federation. It is protected under the copyright laws of the Russian Federation, and ownership of and exclusive rights in the Copyrighted Content are transferred and assigned to Plaintiffs under Russian copyright law. *See* Закон об авторском праве и смежных правах [Law on Copyright and Neighboring Rights], No. 53514, art. 7.1, Aug. 3, 1993 (Russ.);

*see generally* Гражданский Кодекс Российской Федерации [Grazhdanskiy Kodeks Rossiyskoy Federatsii] [GK RF] [Civil Code] § VII (Russ.).

24.    The Plaintiffs' rights in the Copyrighted Content may nonetheless be enforced pursuant to the Copyright Act because both the United States and the Russian Federation are signatories to the Berne Convention, and the United States is therefore obligated, pursuant to the Berne Convention Implementation Act of 1988, to provide the privileges and protections of its copyright laws to works originating in another signatory country. Thus, the Plaintiffs and their Copyrighted Content are entitled to national treatment under 17 U.S.C. § 104(b).

25.    As the Copyrighted Content is a foreign work, it is not subject to the copyright registration requirement applicable to "United States work[s]" under Section 411(a) of the Copyright Act, 17 U.S.C. § 411(a), in order to receive protection under the United States' copyright laws.

**D.     NTV Has Valid Trademarks that are Entitled to Protection**

26.    NTV's channels and the NTV Copyrighted Content are identified by NTV's well-known and distinctive service marks (the "NTV Marks"). The NTV Marks consist of a word mark, "HTB," and a stylized mark that appears in the Cyrillic block letters "NTV" with a reflection spot superimposed on the bottom half of the letter "T."  The NTV Marks, which are displayed when the NTV Copyrighted Content is broadcast and used to advertise NTV's programming, are used to identify and distinguish NTV's popular programs (and the NTV Copyrighted Content) from other Russian-language television programs. The NTV stylized mark is:



27.     The NTV word mark is a valid and live service mark registered on the Principal Register with the U.S. Patent and Trademark Office. Its registration number is 4,148,232. A true and correct copy of the registration certificate is attached hereto as Exhibit 1.  This mark has become uncontestable pursuant to 15 U.S.C. § 1065, which statement was acknowledged by the U.S. Patent and Trademark Office on July 24, 2017.

28.     The NTV design mark is a valid and live service mark registered on the Principal Register with the U.S. Patent and Trademark Office. Its registration number is 4,004,267. A true and correct copy of the registration certificate is attached hereto as Exhibit 2.  This mark has become uncontestable pursuant to 15 U.S.C. § 1065, which statement was acknowledged by the U.S. Patent and Trademark Office on July 24, 2017.

29.     NTV America has an exclusive license to the NTV Marks in the United States.

**E.      The TVTeka Defendants' Unlawful Service**

30.     The TVTeka Defendants operate a video streaming and on demand library service located online at TVTeka.com, through various mobile devices, and IPTV streaming platforms, including, among others, Samsung Smart TV, LG Smart TV, Apple TV, Google TV, Kodi, Dune, Fire TV, iPad, iPhone, Sony PlayStation, Android devices, and Roku. Upon information and belief, the TVTeka Defendants' streams are distributed or transmitted over state lines.

10

Through these offerings, which are listed on TVTeka.com and are directed towards individuals in this judicial district, the TVTeka Defendants distribute Russian language programming through the live and archived rebroadcast of numerous Russian TV networks, including Channel One and NTV. In addition, the TVTeka Defendants select certain Russian language programs, including, *inter alia*, the Copyrighted Content, and make them available through a video on demand library.

31.     Subscribers are granted access to TVTeka's live and archived programs which, upon information and belief, include Plaintiffs' Copyrighted Content, for a range of fees starting at $7.99 per month up to $300 per year. The TVTeka Defendants generate revenues from these subscription fees.

32.     TVTeka.com is available and directed to subscribers in New Jersey. TVTeka's website includes payment options – including a drop-down menu on its payment page allowing subscribers to select "NJ" as the state – to enable customers in this judicial district to pay for subscriptions. Upon information and belief, there are numerous customers in this judicial district who have purchased subscriptions to TVTeka by using these payment options on TVTeka.com.

33.     Since at least January 2017, the TVTeka Defendants have been streaming, broadcasting, and distributing to TVTeka's subscribers, among other Russian language television programs, Plaintiffs' Copyrighted Content.

34.     For example, the TVTeka Defendants allowed TVTeka.com's subscribers in this judicial district to live stream episodes of Detektiv Pasečnik (Детектив Пасечник) and Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие)[2] — among other NTV

---

[2] Screen shots taken on March 2, 2017 of these programs being streamed, broadcast, or otherwise distributed on the TVTeka Defendants' Roku channel, TVTEKA, are included in the First Takedown Notice (defined below), which is attached as Exhibit 3.

Copyrighted Content that originally aired live on NTV — on their Roku channel, INVID9, just hours after it originally aired on NTV. Moreover, the TVTeka Defendants make certain NTV Copyrighted Content, such as Detektiv Pasečnik (Детектив Пасечник) and Govorim I Pokazyvayem (Говорим И Показываем),[3] available on the TVTeka.com archive months after its original broadcast on NTV.

35.     The TVTeka Defendants also allow TVTeka.com's subscribers in this judicial district to view, among other Komanda Copyrighted Content, archived episodes of Davai Pogenimsya (Давай поженимся)[4] months after its original broadcast on Channel One. Moreover, the TVTeka Defendants live streamed episodes of Modny Prigovor (Модный приговор) and Davai Pogenimsya (Давай поженимся)[5] – among other episodes that originally aired on Channel One – on their Roku channel, INVID9.

36.     With a subscription to TVTeka.com, the TVTeka Defendants give consumers and subscribers the ability to view the Copyrighted Content on TVTeka.com and the TVTeka Defendants' numerous Roku channels, including but not limited to TVTEKA, INVID9, and DTV12. Upon information and belief, the TVTeka Defendants also stream, broadcast, and otherwise distribute the Copyrighted Content on TVTeka's mobile applications, through vox-ru.com, and on other IPTV streaming platforms.

---

[3] Screen shots taken on July 6, 2017 of TVTeka.com's archive, offering episodes of Detektiv Pasečnik (Детектив Пасечник) from February 2016 and episodes of Govorim I Pokazyvayem (Говорим И Показываем) from, among other dates, April 2017, are attached as Exhibit 4.

[4] A screen shot taken on July 6, 2017 of TVTeka.com's archive, offering episodes of Davai Pogenimsya (Давай поженимся) from, among other dates, September 2015, is attached as Exhibit 5.

[5] Screen shots taken on March 2, 2017 of these programs being streamed, broadcast, or otherwise distributed on the TVTeka Defendants' Roku channel, TVTEKA, are included in the First Takedown Notice (defined below), which is attached as Exhibit 3.

37.     Plaintiffs have not authorized the TVTeka Defendants to stream the Copyrighted Content on TVTeka's website, mobile devices, or other IPTV streaming platforms, including Roku, or to broadcast and re-broadcast the Copyrighted Content through any other method. Moreover, the TVTeka Defendants could not have obtained the rights to distribute Plaintiffs' Copyrighted Content from any other party. Instead, the TVTeka Defendants acquired, without permission, the encrypted signals of Channel One and NTV and transmitted those signals to their servers, which in turn streamed the channels, including the Copyrighted Content, on the TVTeka Defendants' website, mobile applications, and channels on IPTV streaming platforms.

38.     The TVTeka Defendants have the ability to control whether their subscribers and customers have access, through TVTeka's website, mobile devices, and other IPTV streaming platforms, to the Copyrighted Content. The TVTeka Defendants may remove the Copyrighted Content – and cease the infringing conduct – at any time, but instead choose to make the Copyrighted Content available to TVTeka's customers without Plaintiffs' authorization.

39.     Upon information and belief, the Copyrighted Content is distributed or transmitted to TVTeka's customers from servers owned or operated by the TVTeka Defendants. To the extent the Copyrighted Content is distributed or transmitted from a server operated or controlled by a third party, the TVTeka Defendants induce, cause, or materially contribute to the infringing conduct of those third parties.

**F.     The RUTVClub Defendants' Unlawful Service**

40.     The RUTVClub Defendants operate a video streaming and on demand library service located online at RUTVClub.com, through various mobile devices, and IPTV streaming platforms, including, among others, Roku, Apple TV, Android devices, Kodi, Samsung Smart TV, and LG Smart TV. Upon information and belief, the RUTVClub Defendants' streams are

distributed or transmitted over state lines. Through these offerings, which are listed on RUTVClub.com and are directed towards individuals in this judicial district, the RUTVClub Defendants distribute Russian language programming through the live and archived rebroadcast of numerous Russian TV networks, including Channel One and NTV. In addition, the RUTVClub Defendants select certain Russian language programs, including, inter alia, the Copyrighted Content, and make them available through a video on demand library.

41.     Subscribers can purchase a "basic membership" to RUTVClub for $14 per month or $120 for a full year, or can pay additional fees to view RUTVClub's programs on IPTV streaming platforms (including Roku) or obtain "family access" to the website. The RUTVClub Defendants generate revenues from these subscription fees.

42.     RUTVClub.com is available and directed to subscribers in New Jersey. RUTVClub's website includes payment options – including a blank space on its payment page allowing subscribers to enter "New Jersey" as an address and a drop-down menu on its payment processor's website (to which RUTVClub subscribers are directed to complete their subscription) allowing subscribers to select "NJ" as the state – to enable customers in this judicial district to pay for subscriptions. Upon information and belief, there are numerous customers in this judicial district who have purchased subscriptions to RUTVClub by using these payment options on RUTVClub.com.

43.     Since at least January 2017, the RUTVClub Defendants have been streaming, broadcasting, and distributing to RUTVClub's subscribers, among other Russian language television programs, Plaintiffs' Copyrighted Content.

44.     For example, the RUTVClub Defendants allowed RUTVClub's subscribers in this judicial district to live stream episodes of Chrezvychaynoye Proisshestviye (Чрезвычайное

14

Происшествие)[6] — among other NTV Copyrighted Content that originally aired live on NTV — on their Roku channel, RTVCL, just hours after they originally aired on NTV.  Moreover, the RUTVClub Defendants make certain Copyrighted Content, such as Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей),[7] available on the RUTVClub.com archive months after it was originally broadcast on NTV.

45.     The RUTVClub Defendants also allow RUTVClub's subscribers in this judicial district to view, among other Komanda Copyrighted Content, the program Fidel' Kastro, Kuba-lyubov' moya  (Фидель Кастро, Куба-любовь моя)[8] months after its original broadcast on Channel One. Moreover, the RUTVClub Defendants live streamed episodes of Modny Prigovor (Модный приговор) and Kontrolnaya Zakupka (Контрольная Закупка)[9] – among other episodes that originally aired on Channel One – on their Roku channel, RTVCL.

46.     With a subscription to RUTVClub.com, the RUTVClub Defendants give consumers and subscribers the ability to view the Copyrighted Content on RUTVClub.com and the RUTVClub Defendants' Roku channels, RTVCL and LMX5X9T. Upon information and belief, the RUTVClub Defendants also stream, broadcast, and otherwise distribute the Copyrighted Content on RUTVClub's mobile applications and other channels on IPTV streaming platforms.

---

[6] Screen shots taken on March 24, 2017 of these programs being streamed, broadcast, or otherwise distributed on the RUTVClub Defendants' Roku channel, RTVCL, are included in the Third Takedown Notice (defined below), which is attached as Exhibit 6.

7 A screen shot taken on July 6, 2017 of RUTVClub.com's archive, offering episodes of Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей) from April 2017, are attached as Exhibit 7.

[8] A screen shot taken on July 6, 2017 of Fidel' Kastro, Kuba-lyubov' moya (Фидель Кастро, Куба-любовь моя), which originally aired in 2016, is attached as Exhibit 8.

[9] Screen shots taken on March 22 and 23, 2017 of these programs being streamed, broadcast, or otherwise distributed on the RUTVClub Defendants' Roku channel, RTVCL, are included in the Third Takedown Notice (defined below), which is attached as Exhibit 6.

47.     Upon information and belief, the RUTVClub Defendants' video streaming and on demand library service is related to the TVTeka Defendants' service. Indeed, the RUTVClub Roku channel, RTVCL, is identical in appearance to the TVTeka Roku channel, INVID9, and RUTVClub and TVTeka's respective management companies, Pinebrook Impex and Ariel Impex, are registered at the same address in Scotland.

48.     Plaintiffs have not authorized the RUTVClub Defendants to stream the Copyrighted Content on RUTVClub's website, mobile devices, or other IPTV streaming platforms, including Roku, or to broadcast and re-broadcast the Copyrighted Content through any other method. Moreover, the RUTVClub Defendants could not have obtained the rights to distribute Plaintiffs' Copyrighted Content from any other party. Instead, the RUTVClub Defendants acquired, without permission, the encrypted signals of Channel One and NTV and transmitted those signals to their servers, which in turn streamed the channels, including the Copyrighted Content, on the RUTVClub Defendants' website, mobile applications, and channels on IPTV streaming platforms.

49.     The RUTVClub Defendants have the ability to control whether their subscribers and customers have access, through RUTVClub's website, mobile devices, and other IPTV streaming platforms, to the Copyrighted Content. The RUTVClub Defendants may remove the Copyrighted Content and cease the infringing conduct at any time, but instead choose to make the Copyrighted Content available to RUTVClub's customers without Plaintiffs' authorization.

50.     Upon information and belief, the Copyrighted Content is distributed or transmitted to RUTVClub's customers from servers owned or operated by the RUTVClub Defendants. To the extent the Copyrighted Content is distributed or transmitted from a server

operated or controlled by a third party, the RUTVClub Defendants induce, cause, or materially contribute to the infringing conduct of those third parties.

## G.     The Infringing Defendants' Misleading Marketing Materials

51.     The Infringing Defendants mislead TVTeka and RUTVClub's subscribers, potential customers, and the general public to believe that TVTeka and RUTVClub are licensed or otherwise authorized to stream, broadcast, or distribute Plaintiffs' Copyrighted Content.

52.     TVTeka's website specifically states that TVTeka is "in strict accordance with the requirements of laws and international norms," a "fundamental principle" of which is "the conclusion of a contract with the copyright holder."  The website further represents that TVTeka "ensure[s] the legality and transparency of the mutually beneficial cooperation with the copyright holder" and enters into "paid contract[s] with the copyright holder[s]" of its programs. Such statements are false, and further mislead and confuse the public, who are led to believe that TVTeka is licensed or otherwise authorized to stream, broadcast, or distribute Plaintiffs' Copyrighted Content.

53.     Likewise, RUTVClub's website falsely states that RUTVClub "cooperate[s] with international companies" and "collaborate[s] with" content providers. Such statements mislead and confuse the public, who in turn believe that RUTVClub's collaboration with content providers have resulted in RUTVClub being licensed or otherwise authorized to stream, broadcast, or distribute Plaintiffs' Copyrighted Content.

54.     Moreover, the Infringing Defendants display the NTV Marks without authorization on their websites, TVTeka.com and RUTVClub.com, which the Infringing Defendants operate for the purpose of marketing, and on the channel selection menu of their

Roku channels, including but not limited to TVTEKA and RTVCL.[10]  Upon information and

belief, the Infringing Defendants use the NTV Marks to confuse consumers into falsely believing

that TVTeka and RUTVClub are authorized to stream, broadcast, or distribute NTV's

Copyrighted Content, and to encourage potential customers (who would otherwise view the

Copyrighted Content through authorized venues) to subscribe to TVTeka.com and

RUTVClub.com.

**G.**     **The TVTeka Takedown Notices and the TVTeka Defendants' Recidivist Channels**

55.     On March 14, 2017, pursuant to 17 U.S.C. § 512(c)(3), Plaintiffs filed a

Copyright Infringement Notification with Roku (the "First Takedown Notice") identifying

TVTeka's Roku channels, TVTEKA, DTV12, and INVID9 (collectively, the "Original Roku

Channels"), as infringers. The notice listed the copyrighted work that had been infringed by the

TVTeka Defendants, described where the infringing material appeared, and explained how the

content infringed on Plaintiffs' copyrights. The First Takedown Notice and supporting

documents are attached as Exhibit 3.[11]

56.     Upon receipt of the Takedown Notice, Roku contacted Ariel Impex via email to

question the legitimacy of Plaintiffs' claims. Roku then disabled the three TVTeka channels

identified in the First Takedown Notice — TVTEKA, DTV12, and INVID9 — in compliance

with 17 U.S.C. § 512(c).

---

[10] Screen shots of the NTV Marks displayed on TVTeka.com and TVTEKA are attached as
Exhibit 9. Screen shots of the NTV Marks displayed on RUTVClub.com and RTVCL are
attached as Exhibit 10.

[11] The First Takedown Notice identified multiple parties infringing on their respective
copyrighted content. References to the other infringers have been redacted.

57.     After Roku disabled the channels DTV12 and INVID9, the TVTeka Defendants launched a recidivist campaign in which, undeterred by the Copyright Act and Roku's terms of service, they created a series of new channels to stream, broadcast, or otherwise distribute the Copyrighted Content.  On or about March 28, 2017, the TVTeka Defendants sought to circumvent Roku's removal of channels INVID9 and DTV12 by creating two new channels with Roku access codes PMR38 and FLVM3. The TVTeka Defendants were not discreet about the steps they took: they announced the new channel codes in the FAQ section of TVTeka's website and provided subscribers with instructions to access the new TVTeka channels. Upon information and belief, PMR38 and FLVM3 were substantively identical to the channels they replaced; the new channels even had the same name and logo as the original channels.

58.     On March 29, 2017, Plaintiffs filed a Copyright Infringement Notification with Roku (the "Second Takedown Notice") identifying TVTeka's new Roku channels, PMR38 and FLVM3, as infringers. The notice listed the copyrighted work that had been infringed by the TVTeka Defendants, described where the infringing material appeared, explained how the content infringed on Plaintiffs' copyrights, and highlighted the fact that PMR38 and FLVM3 had been created in an obvious attempt to circumvent Roku's rules. The Second Takedown Notice and supporting documents are attached as Exhibit 11.

59.     On March 30, 2017, Ruth J. Payton submitted a counter-notice (the "FLVM3 Counter-Notice") pursuant to 17 U.S.C. § 512(g)(3). In the FLVM3 Counter-Notice, Ms. Payton responded to the Second Takedown Notice by stating, under penalty of perjury, that she had a "good faith belief that removal or disablement of the content … was a mistake, the material was misidentified and/or that the content … does not infringe the copyright of the IP Owner."  In addition, Ms. Payton identified herself as FLVM3's designated agent and provided contact

19

information, including a phone number, physical address, and email address. The FLVM3 Counter-Notice is attached as Exhibit 12.

60.     Ms. Payton made several misrepresentations in the FLVM3 Counter-Notice. The TVTeka Defendants were not authorized to reproduce, stream, broadcast, or otherwise distribute the Copyrighted Content, and the programs streamed on FLVM3 did, indeed, infringe on NTV America and Komanda's copyrights. Moreover, upon information and belief, the FLVM3 Counter-Notice provided fake contact information, including an address that does not exist.

61.     On March 31, 2017, Samuel Medina submitted a counter-notice (the "PMR38 Counter-Notice") in response to the Second Takedown Notice. In the PMR38 Counter-Notice, Mr. Medina stated, under penalty of perjury, that the Second Takedown Notice was a mistake or misidentified the programs, and that PMR38 did not infringe Plaintiff's Copyright. In addition, Mr. Medina identified himself as PMR38's designated agent and provided contact information, including a phone number, physical address, and email address. The PMR38 Counter-Notice is attached as Exhibit 13.

62.     Similar to Ms. Payton, Mr. Medina made several misrepresentations in the PMR38 Counter-Notice. The programs streamed on PMR38 infringed on NTV America and Komanda's copyrights. And, like Ms. Payton, Mr. Medina provided falsified contact information in the PMR38 Counter-Notice, including an address that does not exist.

63.     On April 1 2017, Ivan Kuznetsov submitted a counter-notice (the "TVTEKA Counter-Notice") in response to the First Takedown Notice. In the TVTEKA Counter-Notice, Mr. Kuznetsov identified himself as TVTEKA's designated agent and provided, under penalty of perjury, a statement similar to the statements made in the FLVM3 and PMR38 Counter-Notices.

In addition, Mr. Kuznetsov listed limited contact information:  a generic TVTeka email address. The TVTEKA Counter-Notice is attached as Exhibit 14.

64.     Like the FLVM3 and PMR38 Counter-Notices, the TVTEKA Counter-Notice made notable misrepresentations. The Copyrighted Content reproduced, streamed, broadcast, or otherwise distributed on TVTEKA did, in fact, infringe on NTV America and Komanda's copyrights. Furthermore, aside from the generic TVTeka email address, Mr. Kuznetsov did not bother to list contact information in the TVTEKA Counter-Notice.

65.     Even though TVTEKA, FLVM3, and PMR38 all infringed on Plaintiffs' copyrights, Roku, relying on the Counter-Notice Defendants' statements in the FLVM3, PMR38, and TVTEKA Counter-Notices, informed Plaintiffs of its intention to restore access to the channels within 10 to 14 business days pursuant to 17 U.S.C. § 521(g)(2)(c) unless Plaintiffs filed an action seeking to restrain the TVTeka Defendants from engaging in infringing activity relating to the material being distributed through Roku's platform.

66.     On or about April 3, 2017, the TVTeka Defendants sought to circumvent Roku's rules by creating a new channel with access code DNTA3. Upon information and belief, DNTA3 was substantively identical to the other TVTeka channels; indeed, DNTA even used the same TVTeka logo as the TVTeka Defendants' other Roku channels.

67.     Recognizing a recidivist pattern, Roku decided — before the expiration of the 10-day period provided in 17 U.S.C. § 521(g)(2)(c) — to designate the TVTeka Defendants' channels as "recidivist" channels that violated the Copyright Act and Roku's terms of service. Roku decided not to restore access to the disabled TVTeka channels, and to automatically disable future TVTeka recidivist channels.

68.     The TVTeka Defendants were not discouraged by Roku's actions; instead, they pressed ahead with their campaign of recidivism. On or about April 4, 2017, the TVTeka Defendants created a new channel, JNA333. And the TVTeka Defendants did not stop there:

- On or about April 5, 2017, the TVTeka Defendants created a new channel, VNMHLMD.

- On or about April 7, 2017, the TVTeka Defendants created a new channel, ATX2.

- On or about April 10, 2017, the TVTeka Defendants created a new channel, NBGC.

- On or about April 12, 2017, the TVTeka Defendants created *four* channels:  VDEXT, EPDMS, pngee, and XTAND.

- On or about April 13, 2017, the TVTeka Defendants created a new channel, ZZBN9.

- On or about April 14, 2017, the TVTeka Defendants created two channels, ABP3D and SKMT7.

- On or about April 17, 2017, the TVTeka Defendants created two channels, GLWTVA and PTMNDA.

- On or about April 21, 2017, the TVTeka Defendants created *four* channels, CRSLZS, ELSDPA, MDRNTR, and AQDPHK.

- On or about April 25, 2017, the TVTeka Defendants created two channels, APLSTH and HLDSNR.

- On or about April 28, 2017, the TVTeka Defendants created two channels, CHPMNAZ and MRTR2R.

- On or about May 1, 2017, the TVTeka Defendants created two channels, LNRTPD and EXPTDA.

- On or about May 7, 2017, the TVTeka Defendants created *six* channels, 2NQKNPM, LHCKD, MRNDSXP, VCESM77, ZANHDF, and BPDSCH.

- On or about May 12, 2017, the TVTeka Defendants created two channels, TXTDMLP and STRMFR.

- On or about May 16, 2017, the TVTeka Defendants created two channels, MXCNSDT and PRPCHND.

- On or about May 18, 2017, the TVTeka Defendants created *four* channels, WDMTCHM, TUND4A, CPCAD5, and FRHJ9BB.

- On or about May 19, 2017, the TVTeka Defendants created two channels, DVTXXAD and GNDR22.

- On or about May 22, 2017, the TVTeka Defendants created *four* channels, STRKME3, WW55TJK, LBRSD99, and BTRDTR2.

- On or about May 24, 2017, the TVTeka Defendants created *four* channels, CHRRK99, CLDSST2, RNRX4D, and LFRDGG.

- On or about May 29, 2017, the TVTeka Defendants created *four* channels, DWNNASD, NTNCHM, NTDR56A, and LBDLX32.

- On or about May 31, 2017, the TVTeka Defendants created two channels, ARTZ45 and NKN5EE.

- On or about June 5, 2017, the TVTeka Defendants created *four* channels, ANTADPT, RCTNHH, SQQATJM, and EECXPAD.

- And on or about June 15, 2017, the TVTeka Defendants created two channels, RCKT834 and EEVEE5.

69.    To date, the TVTeka Defendants, in furtherance of their campaign of persistent unlawful activity, have added over fifty new channels (collectively, the "Recidivist Channels"). TVTeka.com advertised each of the Recidivist Channels as "new" channels. Upon information

23

and belief, the Recidivist Channels are substantively identical to the TVTeka's Original Roku Channels and include, among their offered programming, the Copyrighted Content.

70.     Roku disabled the Recidivist Channels as soon as Plaintiffs notified Roku of their existence.

71.     In addition to creating the Recidivist Channels, the TVTeka Defendants brazenly found other ways to stream, broadcast, or otherwise distribute the Copyrighted Content. TVTeka.com, alleging that it had lost the opportunity to provide TVTeka's services "through the fault of Roku service," encouraged TVTeka's customers to sideload TVTeka's channels in "developer mode," knowing full well that such sideloading violates Roku's terms of use and circumvents Roku's content protections that control access to copyrighted works. Moreover, the TVTeka Defendants continue to stream, broadcast, or otherwise distribute the Copyrighted Content on TVTeka.com.

**H.      The RUTVClub Takedown Notices and the RUTVClub Defendants' Recidivist Channels**

72.     On March 30, 2017, Plaintiffs filed a Copyright Infringement Notification with Roku (the "Third Takedown Notice") identifying RUTVClub's Roku channel, RTVCL, as an infringer. The notice listed the copyrighted work that had been infringed by the RUTVClub Defendants, described where the infringing material appeared, and explained how the content infringed on Plaintiffs' copyrights. In addition, the Third Takedown Notice noted the relationship between the TVTeka Defendants and the RUTVClub Defendants, and stated that "the Roku channel RTVCL is operated by the same party or parties who operate the Roku channel INVID9." The Third Takedown Notice and supporting documents are attached as Exhibit 6.[12]

---

[12] The Third Takedown Notice identified multiple parties infringing on their respective copyrighted content. References to the other infringers have been redacted.

73.     Upon receipt of the Takedown Notice, Roku disabled RTVCL in compliance with 17 U.S.C. § 512(c).

74.     But the RUTVClub Defendants were not dissuaded by Roku's actions. On or about April 5, 2017, RUTVClub's customer support sent an email to RUTVClub's customers instructing them to sideload RUTVClub's Roku channel in "developer mode" – outside the confines of the Roku Store. The instructions were also posted on RUTVClub.com's FAQ section. The installation of channels for this purpose in developer mode violates Roku's terms of use and circumvents Roku's content protections that control access to copyrighted works.

75.     Moreover, the RUTVClub Defendants created a new recidivist channel, LMX5X9T, on or about April 24, 2017. RUTVClub's customer support again sent an email to RUTVClub's customers informing them of the new Roku channel and providing instructions on how to install the new channel. Roku disabled the channel on or about April 27, 2017.

## I.    Defendant's Conduct Causes Irreparable Harm

76.     The Infringing Defendants' websites, mobile applications, and channels on IPTV streaming platforms, including Roku, currently offer TVTeka and RUTVClub's subscribers the ability to access programs from over numerous Russian language networks, including Channel One and NTV.

77.     If not stopped, the Infringing Defendants' conduct will undermine Plaintiffs' relationships with their authorized licensees and interfere with Plaintiffs' ability to negotiate with those legitimate streaming and broadcasting providers. Because the Infringing Defendants do not compensate the copyright owners for the rights they exploit, TVTeka and RUTVClub are able to unfairly compete with licensed providers, which, in some instances, pay significant fees, for the rights to distribute the same content.

78.     If the Infringing Defendants continue to offer the Copyrighted Content, they will unfairly compete with NTV and continue to unlawfully interfere with Komanda's ability to distribute its content, including through authorized licensees or other legitimate distribution channels.

79.     The Infringing Defendants' unauthorized copies and unauthorized distribution further undermines Plaintiffs' ability to negotiate for quality controls in the dissemination of the Copyrighted Content.

80.     In addition, by falsely characterizing their websites, mobile applications, and channels on IPTV streaming platforms, such as their numerous channels on the Roku platform, as legitimate and lawful alternatives to licensed websites and other channels on IPTV streaming platforms, the Infringing Defendants confuse consumers and the public into believing that TVTeka and RUTVClub are authorized to broadcast or re-broadcast the Copyrighted Content – and encourage new customers (who would have otherwise streamed the Copyrighted Content from an authorized party) to subscribe to their service.

81.     The Infringing Defendants also mislead consumers by making it appear on their websites and Roku channels that they have the right to stream, broadcast, or otherwise distribute NTV America's programming by displaying the NTV Marks.

82.     The Infringing Defendants' unlawful conduct and unfair competition with licensed distribution channels have caused, and will continue to cause, Plaintiffs irreparable harm. Unless enjoined, the Infringing Defendants' illegal actions will continue.

## FIRST CAUSE OF ACTION
### Copyright Infringement

83.     Plaintiffs incorporate the allegations in paragraphs 1 through 82 as if fully set forth herein.

84.     The Copyrighted Content consists of original audiovisual works that have been fixed in a tangible medium and are copyrightable subject matter.

85.     The Copyrighted Content, which originated and in and is protected by the laws of the Russian Federation, is subject to the protections of the Copyright Act by virtue of the Berne Convention and 17 U.S.C. § 104(b). The Copyrighted Content does not need to be registered with the United States Copyright Office in order to be eligible for protection under the Copyright Act.

86.     Plaintiffs own or are exclusive licensees to the Copyrighted Content, and have exclusive legal rights in the United States to, among other rights, reproduce copies of the Copyrighted Content, distribute copies to the public of the Copyrighted Content, perform the Copyrighted Content publicly, publicly display the copyrighted Content, and make derivative works based upon the Copyrighted Content. See 17 U.S.C. § 106.

87.     Upon information and belief, the Infringing Defendants reproduced Plaintiffs' Copyrighted Content by obtaining and storing the Copyrighted Content on computer servers they own, operate, or for which the server is operated for the benefit of the Infringing Defendants, without the authorization of Plaintiffs. The reproductions were made for the sole purpose of distributing the Copyrighted Content, for commercial gain, to the Infringing Defendants' subscribers and customers, including a substantial number of subscribers and customers in the United States and in this judicial district.

88.     The Infringing Defendants performed Plaintiffs' Copyrighted Content by displaying it to TVTeka and RUTVClub's subscribers, including those in the United States and this judicial district, through at least: 1) their websites, TVTeka.com and RUTVClub.com; 2) applications on mobile devices; and 3) IPTV streaming platforms, including but not limited to

Roku. Specifically, the Infringing Defendants makes the Copyrighted Content available through there subscription offerings.

89.     By the actions alleged above, the Infringing Defendants have directly infringed and will continue to directly infringe Plaintiffs' copyrights in the Copyrighted Content by unlawfully publicly performing and/or authorizing others to publicly perform the Copyrighted Content in the United States, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106(4).

90.     By the actions alleged above, the Infringing Defendants have also directly infringed and will continue to directly infringe Plaintiffs' copyrights in the Copyrighted Content by unlawfully reproducing and distributing and/or authorizing others to reproduce and distribute the Copyrighted Works in the United States, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106(3).

91.     By the actions alleged above, the Infringing Defendants have directly infringed and will continue to directly infringe Plaintiffs' copyrights in the Copyrighted Content by unlawfully publicly displaying and/or authorizing others to publicly display the Copyrighted Content in the United States, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106(5).

92.      The Infringing Defendants do not have a license agreement and are in no way authorized to reproduce, transmit, publicly perform, or display the Copyrighted Content. Plaintiffs have not provided any authorization and the Infringing Defendants could not have obtained the rights to distribute Plaintiffs' Copyrighted Content from any other party.

93.     The Infringing Defendants reproduced, transmitted, publicly performed, and displayed the Copyrighted Content with the knowledge that they were not authorized to do so. The Infringing Defendants' infringement of Plaintiffs' copyright is therefore willful and in disregard of and with indifference to Plaintiffs' valid and enforceable rights.

94.     Upon information and belief, John Does 1-10 are directly infringing or at a minimum are facilitating and aiding these infringements, and John Does 1-10 are contributing to copyright infringements and are thus both directly and vicariously liable under the Copyright Act, 17 U.S.C. § 101 et seq.

95.     The foregoing acts by the Infringing Defendants are causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated for or measured in money damages. Plaintiffs do not have an adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of the Copyrighted Works and their exclusive rights under the Copyright Act by the Infringing Defendants.

96.     Plaintiffs are also entitled to damages and profits in an amount to be determined at trial together with any such other relief, including, without limitation, reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505, as deemed just, proper, and equitable.

## SECOND CAUSE OF ACTION
### Secondary Copyright Infringement

97.     Plaintiffs incorporate the allegations in paragraphs 1 through 96 as if fully set forth herein.

98.     The streaming, broadcast, and distribution of Plaintiffs' Copyrighted Content on the Infringing Defendants' websites, TVTeka.com, vox-ru.com, and RUTVClub.com; mobile apps; and channels on IPTV streaming platforms, including Roku, infringes Plaintiffs' exclusive rights in the Copyrighted Content.

99.     The Infringing Defendants know or should have reason to know that they do not have a license agreement and are in no way authorized to stream, broadcast, or otherwise distribute the Copyrighted Content. Despite this knowledge, the Infringing Defendants

29

intentionally provide means, through their websites, mobile applications, and channels on IPTV streaming platforms for streaming, broadcasting, or otherwise distributing Plaintiffs' Copyrighted Content.

100.    The Infringing Defendants knowingly and willfully use their respective  websites, mobile applications, and channels on IPTV streaming platforms to induce, cause, materially contribute, and aid or abet copyright infringement by allowing TVTeka and RUTVClub's subscribers and customers to reproduce, publicly perform, and display the Copyrighted Content via, *inter alia*, TVTeka.com, RUTVClub.com, and the Infringing Defendants' numerous Roku channels without authorization and infringes Plaintiffs' exclusive rights in the Copyrighted Content.

101.    The Infringing Defendants have the right and ability to control the infringing acts of TVTeka and RUTVClub's subscribers, but declined to exercise that right. Moreover, the Infringing Defendants receive a direct financial benefit from the infringing activity.

102.    The Infringing Defendants therefore induced, contributed to, and are vicariously liable for any copyright infringement committed by TVTeka and RUTVClub's subscribers, customers, or other persons that are provided access to the Infringing Defendants' services.

103.    The Infringing Defendants took these actions with full knowledge and conscious disregard of Plaintiffs' rights to the Copyrighted Content.  At a minimum, the Infringing Defendants acted with willful blindness or reckless disregard of Plaintiffs' rights to the Copyrighted Content.

104.    Upon information and belief, John Does 1-10 are directly infringing or at a minimum are facilitating and aiding these secondary infringements, and John Does 1-10 are

30

contributing to secondary copyright infringement and are thus both directly and vicariously liable.

105.     The foregoing acts by the Infringing Defendants are causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs irreparable injury. The Court should therefore grant injunctive relief barring the Infringing Defendants from streaming, broadcasting, or otherwise distributing Plaintiffs' Copyrighted Content and damages in an amount to be determined at trial together with any such other relief, including, without limitation, reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505, as deemed just, proper, and equitable.

## THIRD CAUSE OF ACTION
### Federal Trademark Infringement

106.     Plaintiffs incorporate the allegations in paragraphs 1 through 105 as if fully set forth herein.

107.     The NTV Marks are valid and federally registered marks in the United States. They are widely used by NTV America, which has an exclusive license to the NTV Marks in the United States, as well as by third parties to whom NTV America has authorized such use. In addition, the NTV Marks have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

108.     The Infringing Defendants infringe NTV America's rights to the NTV Marks by using, without authorization, the NTV Marks on their websites, TVTeka.com and RUTVClub.com, and their Roku channels, including TVTEKA and RTVCL, to promote, market, or sell the Infringing Defendants' video streaming service, for commercial gain, to TVTeka and RUTVClub's subscribers and customers, including a substantial number of subscribers and customers in interstate and foreign commerce, in the United States and in this judicial district.

31

109.    The Infringing Defendants further infringe the NTV Marks by distributing NTV's broadcast, which includes the use of the NTV Marks on the lower left-hand side of the screen throughout its broadcast as well as displaying the NTV Marks during commercial breaks and advertisements.

110.    The Infringing Defendants do not have a license and are in no way authorized to use the NTV Marks. NTV America has not provided any authorization and the Infringing Defendants could not have obtained the rights to display the NTV Marks from any other party.

111.    The Infringing Defendants have misappropriated the NTV Marks for their own commercial gain and to the detriment of NTV America and NTV America's authorized licensees.

112.    The Infringing Defendants displayed the NTV Marks with the knowledge that they were not authorized to do so. The Infringing Defendants' infringement of the NTV Marks is therefore willful and in disregard of and with indifferent to NTV's valid and enforceable rights.

113.    By the actions alleged above, the Infringing Defendants' use of the NTV Marks constitutes trademark infringement pursuant to 15 U.S.C. § 1114(a)(1).

114.    The Infringing Defendants had direct and full knowledge of NTV America's prior use of and rights in the NTV Marks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

115.    The Infringing Defendants' infringement of the NTV Marks is causing and, unless enjoined by this Court, will continue to cause NTV America irreparable injury that cannot be fully compensated for or measured in money damages.

116.    NTV America is also entitled to damages in an amount to be determined at trial together with any such other relief as deemed just, proper, and equitable.

## FOURTH CAUSE OF ACTION

### Federal Unfair Competition and False Advertising

117.    Plaintiffs incorporate the allegations in paragraphs 1 through 116 as if fully set forth herein.

118.    The Infringing Defendants have deliberately and willfully attempted to trade on Plaintiffs' longstanding and hard-earned goodwill in its marks and the reputation established by Plaintiffs in connection with their products and services, as well as in order to confuse consumers as to the origin and sponsorship of TV programming and to pass off their programming and service in commerce as those authorized by Plaintiffs.

119.    More particularly, the Infringing Defendants use the NTV Marks on their websites, TVTeka.com and RUTVClub.com, their IPTV channels such as their Roku channels TVTEKA and RTVCL, to promote, market, or sell TVTeka and RUTVClub's video streaming devices for their commercial gain.

120.    The Infringing Defendants do not have a license and are in no way authorized to use the NTV Marks. NTV America has not provided any authorization and the Infringing Defendants could not have obtained the rights to display the NTV Marks from any other party.

121.    The Infringing Defendants use the NTV Marks and their misrepresentation as alleged herein to mislead consumers into thinking that TVTeka and RUTVClub are licensed or otherwise authorized by NTV to stream, broadcast, or otherwise distribute the NTV Copyrighted Content.

122.    The Infringing Defendants make other false and misleading statements on their websites, including, among others that they enter into contracts with the copyright holders of

their programs and are thereby authorized by Plaintiffs to distribute the Copyrighted Content and to use the NTV Marks.

123.    The Infringing Defendants' misleading use of the NTV Marks on their website and their Roku channels is visible by TVTeka and RUTVClub's existing subscribers and customers, including a substantial number of subscribers and customers in the United States and in this judicial district, and by potential subscribers and customers in the United States and this judicial district whose decision to subscribe to TVTeka.com and/or RUTVClub.com is influenced by the belief that they are purchasing subscriptions to authorized and licensed service providers.

124.    The advertised services, the Copyrighted Programs, and the marketing of said services, are transmitted by the Infringing Defendants' servers in interstate and foreign commerce, across state lines and national boundaries.

125.    The Infringing Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Infringing Defendants and unauthorized programming and services with Plaintiffs and as to the origin, sponsorship or approval of the Infringing Defendants and their products and services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

126.    Defendants had direct and full knowledge of the prior use of and rights in its marks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

127.    As a result, NTV America will suffer harms, including the loss of revenues from fees it would have otherwise received from licensees. The Infringing Defendants' use of the

NTV Marks is causing and, unless enjoined by this Court, will continue to cause NTV America irreparable injury that cannot be fully compensated for or measured in money damages.

128.   NTV America is also entitled to an accounting of profits made by the Infringing Defendants on revenues relating to the NTV Marks and the NTV Copyrighted Content and damages in an amount to be determined at trial, together with any such other relief as deemed just, proper, and equitable.

**FIFTH CAUSE OF ACTION**

**Unlawful Circumvention Under 17 U.S.C. § 1201(a)(1)**

129.   Plaintiffs incorporate the allegations in paragraphs 1 through 128 as if fully set forth herein.

130.   Roku's policy to require consumer applications to be loaded only from Roku's Channel Store is a technical measure that effectively controls consumer access to content and allows Roku to block piratical and harmful channels.

131.   When Roku, after being notified of the Infringing Defendants' infringing conduct, disabled the Infringing Defendants' Roku channels, the Infringing Defendants devised a plan to circumvent Roku's content protections.

132.   Pursuant to said plan, the Infringing Defendants distributed the program code for Roku applications of their respective channels to their customers and provided their customers with instructions on how to circumvent Roku's content protection and install said channels through Roku's "developer mode," by which the normal Roku device settings can be changed so that the device will accept applications from non-Channel Store sources.   This use of "developer mode" to install Roku channels outside of the authorized Roku's store and for commercial use is a violation of Roku's terms of use.

133.    As a result of the distribution of these channels through the unauthorized use of "developer mode," Roku's technical measures are circumvented and the Infringing Defendants have thus been able to unlawfully distribute the Copyrighted Content using the consumers' Roku devices as a delivery vehicle – despite Roku's content protection.

134.    The Infringing Defendants' conduct constitutes circumvention of a technological measure that effectively controls access to copyrighted works, in violation of 17 U.S.C. §§ 1201(a)(a)(A) and 1201(b).

135.    Plaintiffs have sustained and will continue to sustain actual damage as a result of the Infringing Defendants' circumvention, in that, among other things, it reduces Plaintiffs' revenues, harms Plaintiffs' ability to distribute and license their works, and harms their goodwill.

136.    Plaintiffs are entitled to the Infringing Defendants' profits from their violations of 17 U.S.C. §§ 1201(a)(1) and 1201(b). Alternatively, at the Plaintiffs' election, Plaintiffs are entitled to an award of the maximum statutory damages as permitted by 17 U.S.C. § 1203(c).

137.    The Infringing Defendants' conduct, unless enjoined and restrained by the Court, will cause grave and irreparable injury to Plaintiffs, who have no adequate remedy at law. Pursuant to 17 U.S.C. § 1203, Plaintiffs are entitled to injunctive relief prohibiting further violations of 17 U.S.C. § 1201.

138.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 1203.

### SIXTH CAUSE OF ACTION
### State Law Unfair Competition

139.    Plaintiffs incorporate the allegations in paragraphs 1 through 138 as if fully set forth herein.

140.    NTV America holds the exclusive license to the NTV Marks, which it has used to distribute television content, including the NTV Copyrighted Content.

141.    NTV America licenses entities in the United States, such as DirectTV and Cablevision, to distribute the NTV Copyrighted Content and use the NTV Marks.  These entities offer the NTV Copyrighted Content to their subscribers in exchange for a subscription fee.

142.    The Infringing Defendants never obtained permission from NTV America to use the NTV Marks or distribute the NTV Copyrighted Content, nor could they have obtained such permission from any other party.

143.    The Infringing Defendants nevertheless use the NTV Marks and distribute the NTV Copyrighted Content in a deliberate and willful attempt to trade on Plaintiffs' longstanding and hard-earned goodwill in its marks and the reputation established by Plaintiffs in connection with their products and services, as well as in order to confuse consumers as to the origin and sponsorship of TV programming and to pass off their programming and service in commerce as those authorized by Plaintiffs.

144.    More specifically, the Infringing Defendants use the NTV marks on their websites, TVTeka.com and RUTVClub.com, their IPTV channels such as their Roku channels TVTEKA and RTVCL, to promote, market, or sell TVTeka and RUTVClub's video streaming devices for their commercial gain.

145.    The Infringing Defendants use the NTV Marks and their misrepresentation as alleged herein to mislead consumers into thinking that TVTeka and RUTVClub are licensed or otherwise authorized by NTV to stream, broadcast, or otherwise distribute the NTV Copyrighted Content.

146.    The Infringing Defendants also make other false and misleading statements on their websites.  They state, inter alia, that the Infringing Defendants enter into contracts with the copyright holders of their programs.

147.    The Infringing Defendants' misleading use of the NTV Marks on their website and their Roku channels is visible by TVTeka and RUTVClub's existing subscribers and customers, including a substantial number of subscribers and customers in the United States and in this judicial district, and by potential subscribers and customers in the United States and this judicial district whose decision to subscribe to TVTeka.com and/or RUTVClub.com is influenced by the belief that they are purchasing subscriptions to authorized and licensed service providers.

148.    The Infringing Defendants' misleading use of the NTV Marks is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants and unauthorized programming and services with Plaintiffs and as to the origin, sponsorship, or approval of the Infringing Defendants and their products and services.

149.    As a result, NTV America will suffer harms.  The Infringing Defendants' misleading use of the NTV Marks has misappropriated the value and good will of the NTV Marks and will induce consumers to purchase subscriptions from the Infringing Defendants instead of purchasing a subscription from a licensee authorized by NTV America.

150.    The Infringing Defendants' misappropriation of NTV Marks in connection with the sale of goods in a way that is likely to communicate a false designation of the origin of those goods is a violation of the New Jersey Fair Trade Act, N.J.S.A. 56:4-1 and common law unfair competition law.

151.    The Infringing Defendants' conduct, unless enjoined and restrained by the Court, will cause grave and irreparable injury to Plaintiffs, who have no adequate remedy at law.

152.    Plaintiffs further are entitled to actual damages and for any and all profits derived by the Infringing Defendants from its infringement of NTV America's exclusive rights to the NTV Marks, as well as the recovery by Plaintiffs of their attorneys' fees and full costs in this action.

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants as follows:

A.    Preliminarily and permanently enjoining the Infringing Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them, from (i) reproducing, transmitting, publicly performing, broadcasting and/or displaying Plaintiffs' Copyrighted Content; (ii) inducing, encouraging, marketing, causing, facilitating, and/or materially contributing to the unauthorized reproduction, public performance, broadcast, and/or display of Plaintiffs' Copyrighted Content by others; and (iii) using and infringing the NTV Marks;

B.    Awarding Plaintiffs actual or statutory damages, in an amount to be determined at trial;

C.    Awarding Plaintiffs any profits made by the Infringing Defendants attributable to their violations not taken into account when computing Plaintiffs' actual damages;

D.      Awarding Plaintiffs restitution of money or proper and the disgorgement of any profits acquired by the Infringing Defendants as a result of their unfair competition;

E.      Awarding Plaintiffs their costs of prosecuting this action, including their attorneys' fees;

F.      Awarding Plaintiffs prejudgment interest; and

G.      Awarding Plaintiffs any such other and further relief as the Court deems just, proper, and equitable.

Dated: July 31, 2017

Respectfully submitted,

LEWIS BAACH KAUFMANN MIDDLEMISS PLLC

By: ___ */s/* David G. Liston ___

David G. Liston
Ronald Abramson
Anthony M. Capozzolo
Ari J. Jaffess
The Chrysler Building
405 Lexington Avenue, 62nd Floor
New York, NY  10174
Tel: (212) 826-7001

*Attorneys for Plaintiffs, Art Distribution Inc. d/b/a*
*NTV America and Komanda LLC*