# CERTIFICATE OF EXECUTION OF FORMAL SERVICE

Edinburgh, Sixteenth day of February, Two Thousand and Eighteen

I, **Scott Fenwick**, Messenger-at-Arms, certify that upon the Sixteenth day of February, Two Thousand and Eighteen I duly served a Summons issued by United States District Court of New Jersey, together with Civil Cover Sheet, Complaint and fourteen accompanying exhibits, Form AO 120, Form AO 121, Corporate disclosure statement for Komanda, Corporate disclosure statement for Art Distribution, on behalf of, Lewis Baach Kaufmann Middlemiss PLLC, the legal representatives of Art Distribution Inc. and Komanda LLC, as instructed by Anderson Strathern LLP, 1 Rutland Court, Edinburgh, EH3 8EY, of which the attached is a true copy, upon **Ariel Impex LP,** 12 South Bridge, Suite 1, Edinburgh, EH1 1DD.

This I did by leaving the Summons issued by United States District Court of New Jersey, together with Civil Cover Sheet, Complaint and fourteen accompanying exhibits, Form AO 120, Form AO 121, Corporate disclosure statement for Komanda, Corporate disclosure statement for Art Distribution, on behalf of, Lewis Baach Kaufmann Middlemiss PLLC, the legal representatives of Art Distribution Inc. and Komanda LLC, as instructed by Anderson Strathern LLP, 1 Rutland Court, Edinburgh, EH3 8EY, of which the attached is a true copy, at 12 South Bridge, Suite 1, Edinburgh, EH1 1DD, being the registered office on Sixteenth day of February, Two Thousand and Eighteen at 13:00hrs, in the hands of Dag Docherty, an employee, before and in the presence of Eve Robertson, 30 Melville Street, Edinburgh, EH3 7HA, witness to the premises and hereto with me subscribing.

**Eve Robertson**
Witness

**Scott Fenwick**
Messenger-at-Arms
30 Melville Street, Edinburgh, EH3 7HA

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ART DISTRIBUTION INC., ET AL.,**
*Plaintiff*

V.          **SUMMONS IN A CIVIL CASE**

**ARIEL IMPEX LP, ET AL.,**
*Defendant*

CASE
NUMBER: **2:17–CV–05592–WJM–MF**

TO: *(Name and address of Defendant):*

```
Ariel Impex LP
12 South Bridge, Suite 1
Edinburgh, Scotland EH1 1DD
```

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) –– or 60 days if you are the United States or a United States Agency, or an office or employee of the United States described in Fed. R. civ. P. 12 (a)(2) or (3) –– you must serve on the plaintiff an answer to the attached complaint or a motion under rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff`s attorney, whose name and address are:
```
David Liston
Lewis Baach Kaufmann Middlemiss PLLC
The Chrysler Building
405 Lexington Avenue
62nd Floor
New York, New York 10174
```

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**WILLIAM T. WALSH**
CLERK

**CHRISTINE MELILLO**
(By) DEPUTY CLERK



**ISSUED ON 2017–08–01 10:44:11**, Clerk
USDC NJD

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.

☐ Name of person with whom the summons and complaint were left:_____

☐ Returned unexecuted:_____

_____

_____

☐ Other (specify) :_____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____      _____
                    Date                    *Signature of Server*

                                         _____
                                         *Address of Server*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Art Distribution Inc. d/b/a NTV America and Komanda LLC | Ariel Impex LP; Pinebrook Impex LP; and John Does 1 through 10 |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David G. Liston, LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
The Chrysler Building, 405 Lexington Ave.,
62nd Floor, New York, NY 10174        (212) 826-7001

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☒ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 380 Other Personal Property Damage | | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____

Brief description of cause:
_____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*        JUDGE _____        DOCKET NUMBER _____

DATE
July 31, 2017

SIGNATURE OF ATTORNEY OF RECORD
*David G. Liston*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

David G. Liston
Ronald Abramson
Anthony M. Capozzolo
Ari J. Jaffess
**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 826-7001

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ART DISTRIBUTION INC. d/b/a NTV AMERICA and KOMANDA LLC, | Case No.: |
| Plaintiffs, | |
| v. | |
| ARIEL IMPEX LP; PINEBROOK IMPEX LP; and JOHN DOES 1 through 10, | **COMPLAINT** |
| Defendants. | |

Plaintiffs Art Distribution Inc. d/b/a NTV America and Komanda LLC (together referred to herein as the "Plaintiffs"), by and through their attorneys, Lewis Baach Kaufmann Middlemiss pllc, submit this Complaint for Copyright Infringement, Secondary Copyright Infringement, Trademark Infringement, False Advertising, and Unlawful Circumvention, and respectfully allege as follows:

**NATURE OF THE ACTION**

1. This action seeks to restrain the Defendants herein from unauthorized streaming, transmission, broadcast, and distribution of valuable foreign language television programming through various methods, including without limitation the Internet, mobile applications, and

1

Internet Protocol television ("IPTV") streaming platforms, such as the Roku platform ("Roku"), and to seek monetary compensation with respect thereto.

## THE PARTIES

2.    Plaintiff Art Distribution Inc. d/b/a NTV America ("NTV America") is a company organized under the laws of New Jersey. Its principal place of business is 1 Marine Road, Suite 305, North Bergen, New Jersey 07047.

3.    Plaintiff Komanda LLC ("Komanda") is a limited liability company organized under the laws of the Russian Federation. Its principal place of business is 129515 Russia, Moscow, Akademik Korolev str., 13, building 1, office 62.

4.    Defendant Ariel Impex LP ("Ariel Impex") is a company organized and existing under the laws of Great Britain (UK), with its registered head office at 12 South Bridge, Suite 1, Edinburgh, Scotland EH1 1DD, Great Britain (UK). Ariel Impex is identified on TVTeka.com as the management company responsible for the Russian language TV programming service known as "TVTeka." Plaintiffs have been unable to otherwise ascertain the owner and operator of TVTeka.com, as the identity of the registrant of the domain is shielded through WHOISGUARD, Inc., a company located in Panama.

5.    Defendant Pinebrook Impex LP ("Pinebrook Impex") is a company organized and existing under the laws of Great Britain (UK), with its registered head of office also located at 12 South Bridge, Suite 1, Edinburgh, Scotland EH1 1DD, Great Britain (UK). Pinebrook Impex is identified on RUTVClub.com as the management company responsible for the Russian language TV programming service known as "RUTVClub." Plaintiffs have been unable to otherwise ascertain the owner and operator of RUTVClub.com, as the identity of the registrant of the

domain is shielded through Privacy Protection Service INC d/b/a PrivacyProtect.org, a company located in Australia.

6.      Plaintiffs do not know the true name and capacity of Defendants John Does 1 -10 and therefore sue these defendants by such fictitious name. Plaintiffs will amend the Complaint to allege the true name and capacity of John Does 1-10 when ascertained. Upon information and belief, Defendants John Does 1-10 are individuals or entities that own, do business as, or act in concert with, or at the direction of, Ariel Impex and Pinebrook Impex to distribute infringing content as TVTeka and RUTVClub, respectively, through the Internet, mobile applications, and various IPTV streaming platforms, including but not limited to Roku.

## JURISDICTION AND VENUE

7.      The Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 with respect to Plaintiffs' federal statutory claims and 28 U.S.C. § 1367 with respect to Plaintiffs' state law claims.

8.      Personal jurisdiction over Defendants is proper because they purposefully directed their conduct towards, and purposefully availed themselves of, the privileges of conducting business activities within this judicial district by, among other things, streaming, broadcasting, or otherwise distributing certain Copyrighted Content (defined below) and the NTV Marks (defined below) to promote, market, or sell their services to consumers in this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(a).

## BACKGROUND FACTS

**A.    Introduction**

10.    Each Plaintiff owns the copyrights or is an exclusive licensee to certain Russian language television programs originating in and protected by the laws of the Russian Federation. Plaintiffs can proceed as copyright owners for purposes of the U.S. Copyright Act, which implements the Berne Convention for the Protection of Literary and Artistic Works (the "Berne Convention") and other applicable international conventions, to which the Russian Federation is a contracting state. Among the bundle of rights afforded to Plaintiffs as copyright owners under United States copyright law are the exclusive rights to "reproduce the copyrighted work," "distribute copies … of the copyrighted work to the public," "perform the copyrighted work publicly," and "display the copyrighted work publicly." 17 U.S.C. § 106. This includes the exclusive right "to transmit or otherwise communicate a performance or display of" Plaintiffs' copyrighted television programs "to the public by means of any device or process whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times." *Id.* § 101.

11.    The Russian language programs, which are originally broadcast in the Russian Federation on two popular television channels, Channel One and NTV, have a large audience not only in the Russian Federation, but internationally, as well. To meet the international demand for these Russian language programs, and make the programs available to their respective viewers, Plaintiffs authorize third parties that they find to be suitable licensees to stream, broadcast, or distribute the content to consumers in, among other places, the United States.

12.    Like the above-mentioned authorized third parties, Ariel Impex, along with any other John Does that own, operate, or do business as TVTeka (collectively, the "TVTeka

4

Defendants"), and Pinebrook Impex, along with any other John Does that own, operate, or do business as RUTVClub.com (collectively, the "RUTVClub Defendants," and together with the TVTeka Defendants, the "Infringing Defendants"), offer their paying subscribers access to Plaintiffs' Russian language television programming through a variety of platforms, including the Internet, mobile applications, and IPTV streaming platforms.

13.     However, unlike the authorized third parties — and contrary to the representations made on TVTeka.com and RUTVClub.com — the Infringing Defendants do not have a valid license or authorization to distribute the copyrighted programs.

14.     The Infringing Defendants never obtained permission from Plaintiffs to distribute the content, nor could they have obtained such permission from any other party. But this has not stopped the Infringing Defendants from illegally streaming, broadcasting, and otherwise distributing Plaintiffs' copyrighted programs. Upon information and belief, the Infringing Defendants instead acquire, without permission, the encrypted signals of Channel One and NTV and transmit those signals to their servers, which in turn distribute the channels' programs, including Plaintiffs' copyrighted programs. Such distribution is effected through the Infringing Defendants' websites, TVTeka.com and RUTVClub.com; gateway websites such as vox-ru.com; the Infringing Defendants' mobile applications; and their channels on IPTV streaming platforms, such as their numerous Roku channels.

15.     The Infringing Defendants have given no indication whatsoever that they intend to put a stop to their infringing conduct. Indeed, they have continued to stream, broadcast, or otherwise distribute Plaintiffs' copyrighted programs after Plaintiffs submitted Digital Millennium Copyright Act ("DMCA") takedown notices to Roku — and even after Roku disabled the Infringing Defendants' channels. Undeterred, the Infringing Defendants created, and

continue to create, a number of recidivist Roku channels; continue to stream Plaintiffs' programs on their websites and other IPTV streaming platforms; and encourage their subscribers to install channels outside of the approved Roku platform through a misuse of Roku's "developer mode," knowing full well that such misuse circumvents Roku's content protections that control access to copyrighted works.

16.     Despite their infringing activity, the Infringing Defendants have consistently held themselves out as authorized distributors of Plaintiffs' Russian language programs. Indeed, the TVTeka Defendants falsely state on their website that they enter into contracts with the programs' copyright owners and the RUTVClub Defendants state that they collaborate with Russian companies and providers.

17.     Further, the Infringing Defendants use the registered marks for which NTV America holds an exclusive license without authorization to advertise their services.

18.     The Infringing Defendants' actions run afoul of Plaintiffs' rights in the Russian language programs and violate the Copyright and Lanham Acts. Unless enjoined by this Court, the Infringing Defendants' actions will cause irreparable harm by, among other things, interfering with Plaintiffs' ability to negotiate legitimate license agreements with third parties, reducing Plaintiffs' control over the distribution of their copyrighted content, and undermining Plaintiffs' ability to negotiate and implement quality controls in the dissemination of their Russian language programs.

19.     Plaintiffs respectfully request that the Court enjoin the Infringing Defendants' unlawful conduct as well as award Plaintiffs damages and profits arising out of the Infringing Defendants' unlawful conduct in addition to any and all other relief authorized by statute or at common law, including but not limited to an award of costs and attorneys' fees.

**B.    Plaintiffs and the Copyrighted Works**

20.    NTV America holds an exclusive license in the United States to the copyrights of original television programs that are shown on Russian language television, including most of the content that is shown on the Russian television network, NTV. The programs in question are produced by the Russian television network, NTV, and exclusively licensed to its affiliate, NTV America, to reproduce, distribute, publicly perform, and display the programs in the United States. Examples of Russian television programs to which NTV America is the exclusive licensee in the United States include, among others, all episodes of those programs distributed under the following names:[1]

- Detektiv Pasečnik (Детектив Пасечник);
- Mesto vstreči (Место встречи);
- Vozvrašenie Muhtara (Возвращение Мухтара);
- Segodnja (Сегодня);
- Govorim I Pokazyvayem (Говорим И Показываем);
- Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей);
- Uchitel' v zakone (Учитель в законе); and
- Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие) (collectively, the "NTV Copyrighted Content").

21.    Komanda is the sole worldwide copyright owner for certain original television programs that are shown on Russian language television, including content that is shown on the Russian television network, Channel One. The programs in question are developed in Russia by a producer that transfers and assigns to Komanda exclusive rights — including the right to reproduce, distribute, publicly perform, and display. Examples of Russian television programs to which Komanda has been assigned the copyrights include, among others, many episodes of those programs distributed under the following names:

- Davai Pogenimsya (Давай поженимся);

---

[1] Each program's name has been listed in both Latin characters and Cyrillic.

7

- Modny Prigovor (Модный приговор);
- Segodnya Vecherom (Сегодня вечером);
- Kontrolnaja Zakupka (Контрольная закупка);
- Luchshe Vsekh (Лучше всех);
- Idealny Remont (Идеальный ремонт);
- Fidel' Kastro, Kuba-lyubov' moya  (Фидель Кастро, Куба-любовь моя);
- Bez strakhovki (Без страховки);
- Na noch' glyadya (На ночь глядя); and
- Prozharka (Прожарка) (collectively, the "Komanda Copyrighted Content," and together with NTV Copyrighted Content, the "Copyrighted Content").

22.     Plaintiffs' Copyrighted Content is among some of the most popular Russian language programming and is broadcast on the Russian television networks NTV and Channel One. Furthermore, the popularity of the Copyrighted Content extends beyond the Russian Federation; due to its popularity in the United States, it is also broadcast and restreamed across the United States by NTV America and/or certain third parties authorized by NTV America and Komanda, such as DirectTV or Cablevision. Because they have invested (and continue to invest) substantial resources and efforts each year to support the development, production, and broadcast of the Copyrighted Content, Plaintiffs provide authorization, permission, or consent to broadcast or distribute the content only through license agreements with third parties that Plaintiffs find to be suitable licensees, which, depending on the terms of the license, may allow the Copyrighted Content to be broadcast over the Internet, mobile applications, and other IPTV streaming platforms, including Roku.

**C.     Plaintiffs' Copyrighted Content is Protected by the Copyright Act**

23.     Plaintiffs' Copyrighted Content is not a United States work, but originates and is first broadcast in the Russian Federation. It is protected under the copyright laws of the Russian Federation, and ownership of and exclusive rights in the Copyrighted Content are transferred and assigned to Plaintiffs under Russian copyright law. *See* Закон об авторском праве и смежных правах [Law on Copyright and Neighboring Rights], No. 53514, art. 7.1, Aug. 3, 1993 (Russ.);

*see generally* Гражданский Кодекс Российской Федерации [Grazhdanskiy Kodeks Rossiyskoy Federatsii] [GK RF] [Civil Code] § VII (Russ.).

24.     The Plaintiffs' rights in the Copyrighted Content may nonetheless be enforced pursuant to the Copyright Act because both the United States and the Russian Federation are signatories to the Berne Convention, and the United States is therefore obligated, pursuant to the Berne Convention Implementation Act of 1988, to provide the privileges and protections of its copyright laws to works originating in another signatory country. Thus, the Plaintiffs and their Copyrighted Content are entitled to national treatment under 17 U.S.C. § 104(b).

25.     As the Copyrighted Content is a foreign work, it is not subject to the copyright registration requirement applicable to "United States work[s]" under Section 411(a) of the Copyright Act, 17 U.S.C. § 411(a), in order to receive protection under the United States' copyright laws.

## D.     NTV Has Valid Trademarks that are Entitled to Protection

26.     NTV's channels and the NTV Copyrighted Content are identified by NTV's well-known and distinctive service marks (the "NTV Marks"). The NTV Marks consist of a word mark, "HTB," and a stylized mark that appears in the Cyrillic block letters "NTV" with a reflection spot superimposed on the bottom half of the letter "T."  The NTV Marks, which are displayed when the NTV Copyrighted Content is broadcast and used to advertise NTV's programming, are used to identify and distinguish NTV's popular programs (and the NTV Copyrighted Content) from other Russian-language television programs. The NTV stylized mark is:

9



27.     The NTV word mark is a valid and live service mark registered on the Principal Register with the U.S. Patent and Trademark Office. Its registration number is 4,148,232. A true and correct copy of the registration certificate is attached hereto as Exhibit 1.  This mark has become uncontestable pursuant to 15 U.S.C. § 1065, which statement was acknowledged by the U.S. Patent and Trademark Office on July 24, 2017.

28.     The NTV design mark is a valid and live service mark registered on the Principal Register with the U.S. Patent and Trademark Office. Its registration number is 4,004,267. A true and correct copy of the registration certificate is attached hereto as Exhibit 2.  This mark has become uncontestable pursuant to 15 U.S.C. § 1065, which statement was acknowledged by the U.S. Patent and Trademark Office on July 24, 2017.

29.     NTV America has an exclusive license to the NTV Marks in the United States.

**E.      The TVTeka Defendants' Unlawful Service**

30.     The TVTeka Defendants operate a video streaming and on demand library service located online at TVTeka.com, through various mobile devices, and IPTV streaming platforms, including, among others, Samsung Smart TV, LG Smart TV, Apple TV, Google TV, Kodi, Dune, Fire TV, iPad, iPhone, Sony PlayStation, Android devices, and Roku. Upon information and belief, the TVTeka Defendants' streams are distributed or transmitted over state lines.

10

Through these offerings, which are listed on TVTeka.com and are directed towards individuals in this judicial district, the TVTeka Defendants distribute Russian language programming through the live and archived rebroadcast of numerous Russian TV networks, including Channel One and NTV. In addition, the TVTeka Defendants select certain Russian language programs, including, *inter alia*, the Copyrighted Content, and make them available through a video on demand library.

31.     Subscribers are granted access to TVTeka's live and archived programs which, upon information and belief, include Plaintiffs' Copyrighted Content, for a range of fees starting at $7.99 per month up to $300 per year. The TVTeka Defendants generate revenues from these subscription fees.

32.     TVTeka.com is available and directed to subscribers in New Jersey. TVTeka's website includes payment options – including a drop-down menu on its payment page allowing subscribers to select "NJ" as the state – to enable customers in this judicial district to pay for subscriptions. Upon information and belief, there are numerous customers in this judicial district who have purchased subscriptions to TVTeka by using these payment options on TVTeka.com.

33.     Since at least January 2017, the TVTeka Defendants have been streaming, broadcasting, and distributing to TVTeka's subscribers, among other Russian language television programs, Plaintiffs' Copyrighted Content.

34.     For example, the TVTeka Defendants allowed TVTeka.com's subscribers in this judicial district to live stream episodes of Detektiv Pasečnik (Детектив Пасечник) and Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие)[2] — among other NTV

---

[2] Screen shots taken on March 2, 2017 of these programs being streamed, broadcast, or otherwise distributed on the TVTeka Defendants' Roku channel, TVTEKA, are included in the First Takedown Notice (defined below), which is attached as Exhibit 3.

Copyrighted Content that originally aired live on NTV — on their Roku channel, INVID9, just hours after it originally aired on NTV. Moreover, the TVTeka Defendants make certain NTV Copyrighted Content, such as Detektiv Pasečnik (Детектив Пасечник) and Govorim I Pokazyvayem (Говорим И Показываем),[3] available on the TVTeka.com archive months after its original broadcast on NTV.

35.     The TVTeka Defendants also allow TVTeka.com's subscribers in this judicial district to view, among other Komanda Copyrighted Content, archived episodes of Davai Pogenimsya (Давай поженимся)[4] months after its original broadcast on Channel One. Moreover, the TVTeka Defendants live streamed episodes of Modny Prigovor (Модный приговор) and Davai Pogenimsya (Давай поженимся)[5] – among other episodes that originally aired on Channel One – on their Roku channel, INVID9.

36.     With a subscription to TVTeka.com, the TVTeka Defendants give consumers and subscribers the ability to view the Copyrighted Content on TVTeka.com and the TVTeka Defendants' numerous Roku channels, including but not limited to TVTEKA, INVID9, and DTV12. Upon information and belief, the TVTeka Defendants also stream, broadcast, and otherwise distribute the Copyrighted Content on TVTeka's mobile applications, through vox-ru.com, and on other IPTV streaming platforms.

---

[3] Screen shots taken on July 6, 2017 of TVTeka.com's archive, offering episodes of Detektiv Pasečnik (Детектив Пасечник) from February 2016 and episodes of Govorim I Pokazyvayem (Говорим И Показываем) from, among other dates, April 2017, are attached as Exhibit 4.

[4] A screen shot taken on July 6, 2017 of TVTeka.com's archive, offering episodes of Davai Pogenimsya (Давай поженимся) from, among other dates, September 2015, is attached as Exhibit 5.

[5] Screen shots taken on March 2, 2017 of these programs being streamed, broadcast, or otherwise distributed on the TVTeka Defendants' Roku channel, TVTEKA, are included in the First Takedown Notice (defined below), which is attached as Exhibit 3.

37.     Plaintiffs have not authorized the TVTeka Defendants to stream the Copyrighted Content on TVTeka's website, mobile devices, or other IPTV streaming platforms, including Roku, or to broadcast and re-broadcast the Copyrighted Content through any other method. Moreover, the TVTeka Defendants could not have obtained the rights to distribute Plaintiffs' Copyrighted Content from any other party. Instead, the TVTeka Defendants acquired, without permission, the encrypted signals of Channel One and NTV and transmitted those signals to their servers, which in turn streamed the channels, including the Copyrighted Content, on the TVTeka Defendants' website, mobile applications, and channels on IPTV streaming platforms.

38.     The TVTeka Defendants have the ability to control whether their subscribers and customers have access, through TVTeka's website, mobile devices, and other IPTV streaming platforms, to the Copyrighted Content. The TVTeka Defendants may remove the Copyrighted Content – and cease the infringing conduct – at any time, but instead choose to make the Copyrighted Content available to TVTeka's customers without Plaintiffs' authorization.

39.     Upon information and belief, the Copyrighted Content is distributed or transmitted to TVTeka's customers from servers owned or operated by the TVTeka Defendants. To the extent the Copyrighted Content is distributed or transmitted from a server operated or controlled by a third party, the TVTeka Defendants induce, cause, or materially contribute to the infringing conduct of those third parties.

**F.      The RUTVClub Defendants' Unlawful Service**

40.     The RUTVClub Defendants operate a video streaming and on demand library service located online at RUTVClub.com, through various mobile devices, and IPTV streaming platforms, including, among others, Roku, Apple TV, Android devices, Kodi, Samsung Smart TV, and LG Smart TV. Upon information and belief, the RUTVClub Defendants' streams are

13

distributed or transmitted over state lines. Through these offerings, which are listed on RUTVClub.com and are directed towards individuals in this judicial district, the RUTVClub Defendants distribute Russian language programming through the live and archived rebroadcast of numerous Russian TV networks, including Channel One and NTV. In addition, the RUTVClub Defendants select certain Russian language programs, including, inter alia, the Copyrighted Content, and make them available through a video on demand library.

41.     Subscribers can purchase a "basic membership" to RUTVClub for $14 per month or $120 for a full year, or can pay additional fees to view RUTVClub's programs on IPTV streaming platforms (including Roku) or obtain "family access" to the website. The RUTVClub Defendants generate revenues from these subscription fees.

42.     RUTVClub.com is available and directed to subscribers in New Jersey. RUTVClub's website includes payment options – including a blank space on its payment page allowing subscribers to enter "New Jersey" as an address and a drop-down menu on its payment processor's website (to which RUTVClub subscribers are directed to complete their subscription) allowing subscribers to select "NJ" as the state – to enable customers in this judicial district to pay for subscriptions. Upon information and belief, there are numerous customers in this judicial district who have purchased subscriptions to RUTVClub by using these payment options on RUTVClub.com.

43.     Since at least January 2017, the RUTVClub Defendants have been streaming, broadcasting, and distributing to RUTVClub's subscribers, among other Russian language television programs, Plaintiffs' Copyrighted Content.

44.     For example, the RUTVClub Defendants allowed RUTVClub's subscribers in this judicial district to live stream episodes of Chrezvychaynoye Proisshestviye (Чрезвычайное

Происшествие)[6] — among other NTV Copyrighted Content that originally aired live on NTV — on their Roku channel, RTVCL, just hours after they originally aired on NTV. Moreover, the RUTVClub Defendants make certain Copyrighted Content, such as Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей),[7] available on the RUTVClub.com archive months after it was originally broadcast on NTV.

45. The RUTVClub Defendants also allow RUTVClub's subscribers in this judicial district to view, among other Komanda Copyrighted Content, the program Fidel' Kastro, Kuba-lyubov' moya (Фидель Кастро, Куба-любовь моя)[8] months after its original broadcast on Channel One. Moreover, the RUTVClub Defendants live streamed episodes of Modny Prigovor (Модный приговор) and Kontrolnaya Zakupka (Контрольная Закупка)[9] – among other episodes that originally aired on Channel One – on their Roku channel, RTVCL.

46. With a subscription to RUTVClub.com, the RUTVClub Defendants give consumers and subscribers the ability to view the Copyrighted Content on RUTVClub.com and the RUTVClub Defendants' Roku channels, RTVCL and LMX5X9T. Upon information and belief, the RUTVClub Defendants also stream, broadcast, and otherwise distribute the Copyrighted Content on RUTVClub's mobile applications and other channels on IPTV streaming platforms.

---

[6] Screen shots taken on March 24, 2017 of these programs being streamed, broadcast, or otherwise distributed on the RUTVClub Defendants' Roku channel, RTVCL, are included in the Third Takedown Notice (defined below), which is attached as Exhibit 6.

7 A screen shot taken on July 6, 2017 of RUTVClub.com's archive, offering episodes of Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей) from April 2017, are attached as Exhibit 7.

[8] A screen shot taken on July 6, 2017 of Fidel' Kastro, Kuba-lyubov' moya (Фидель Кастро, Куба-любовь моя), which originally aired in 2016, is attached as Exhibit 8.

[9] Screen shots taken on March 22 and 23, 2017 of these programs being streamed, broadcast, or otherwise distributed on the RUTVClub Defendants' Roku channel, RTVCL, are included in the Third Takedown Notice (defined below), which is attached as Exhibit 6.

47.     Upon information and belief, the RUTVClub Defendants' video streaming and on demand library service is related to the TVTeka Defendants' service. Indeed, the RUTVClub Roku channel, RTVCL, is identical in appearance to the TVTeka Roku channel, INVID9, and RUTVClub and TVTeka's respective management companies, Pinebrook Impex and Ariel Impex, are registered at the same address in Scotland.

48.     Plaintiffs have not authorized the RUTVClub Defendants to stream the Copyrighted Content on RUTVClub's website, mobile devices, or other IPTV streaming platforms, including Roku, or to broadcast and re-broadcast the Copyrighted Content through any other method. Moreover, the RUTVClub Defendants could not have obtained the rights to distribute Plaintiffs' Copyrighted Content from any other party. Instead, the RUTVClub Defendants acquired, without permission, the encrypted signals of Channel One and NTV and transmitted those signals to their servers, which in turn streamed the channels, including the Copyrighted Content, on the RUTVClub Defendants' website, mobile applications, and channels on IPTV streaming platforms.

49.     The RUTVClub Defendants have the ability to control whether their subscribers and customers have access, through RUTVClub's website, mobile devices, and other IPTV streaming platforms, to the Copyrighted Content. The RUTVClub Defendants may remove the Copyrighted Content and cease the infringing conduct at any time, but instead choose to make the Copyrighted Content available to RUTVClub's customers without Plaintiffs' authorization.

50.     Upon information and belief, the Copyrighted Content is distributed or transmitted to RUTVClub's customers from servers owned or operated by the RUTVClub Defendants. To the extent the Copyrighted Content is distributed or transmitted from a server

16

operated or controlled by a third party, the RUTVClub Defendants induce, cause, or materially contribute to the infringing conduct of those third parties.

**G.     The Infringing Defendants' Misleading Marketing Materials**

51.     The Infringing Defendants mislead TVTeka and RUTVClub's subscribers, potential customers, and the general public to believe that TVTeka and RUTVClub are licensed or otherwise authorized to stream, broadcast, or distribute Plaintiffs' Copyrighted Content.

52.     TVTeka's website specifically states that TVTeka is "in strict accordance with the requirements of laws and international norms," a "fundamental principle" of which is "the conclusion of a contract with the copyright holder."  The website further represents that TVTeka "ensure[s] the legality and transparency of the mutually beneficial cooperation with the copyright holder" and enters into "paid contract[s] with the copyright holder[s]" of its programs. Such statements are false, and further mislead and confuse the public, who are led to believe that TVTeka is licensed or otherwise authorized to stream, broadcast, or distribute Plaintiffs' Copyrighted Content.

53.     Likewise, RUTVClub's website falsely states that RUTVClub "cooperate[s] with international companies" and "collaborate[s] with" content providers. Such statements mislead and confuse the public, who in turn believe that RUTVClub's collaboration with content providers have resulted in RUTVClub being licensed or otherwise authorized to stream, broadcast, or distribute Plaintiffs' Copyrighted Content.

54.     Moreover, the Infringing Defendants display the NTV Marks without authorization on their websites, TVTeka.com and RUTVClub.com, which the Infringing Defendants operate for the purpose of marketing, and on the channel selection menu of their

Roku channels, including but not limited to TVTEKA and RTVCL.[10] Upon information and belief, the Infringing Defendants use the NTV Marks to confuse consumers into falsely believing that TVTeka and RUTVClub are authorized to stream, broadcast, or distribute NTV's Copyrighted Content, and to encourage potential customers (who would otherwise view the Copyrighted Content through authorized venues) to subscribe to TVTeka.com and RUTVClub.com.

**G.    The TVTeka Takedown Notices and the TVTeka Defendants' Recidivist Channels**

55.    On March 14, 2017, pursuant to 17 U.S.C. § 512(c)(3), Plaintiffs filed a Copyright Infringement Notification with Roku (the "First Takedown Notice") identifying TVTeka's Roku channels, TVTEKA, DTV12, and INVID9 (collectively, the "Original Roku Channels"), as infringers. The notice listed the copyrighted work that had been infringed by the TVTeka Defendants, described where the infringing material appeared, and explained how the content infringed on Plaintiffs' copyrights. The First Takedown Notice and supporting documents are attached as Exhibit 3.[11]

56.    Upon receipt of the Takedown Notice, Roku contacted Ariel Impex via email to question the legitimacy of Plaintiffs' claims. Roku then disabled the three TVTeka channels identified in the First Takedown Notice — TVTEKA, DTV12, and INVID9 — in compliance with 17 U.S.C. § 512(c).

---

[10] Screen shots of the NTV Marks displayed on TVTeka.com and TVTEKA are attached as Exhibit 9. Screen shots of the NTV Marks displayed on RUTVClub.com and RTVCL are attached as Exhibit 10.

[11] The First Takedown Notice identified multiple parties infringing on their respective copyrighted content. References to the other infringers have been redacted.

57.     After Roku disabled the channels DTV12 and INVID9, the TVTeka Defendants

launched a recidivist campaign in which, undeterred by the Copyright Act and Roku's terms of

service, they created a series of new channels to stream, broadcast, or otherwise distribute the

Copyrighted Content.  On or about March 28, 2017, the TVTeka Defendants sought to

circumvent Roku's removal of channels INVID9 and DTV12 by creating two new channels with

Roku access codes PMR38 and FLVM3. The TVTeka Defendants were not discreet about the

steps they took: they announced the new channel codes in the FAQ section of TVTeka's website

and provided subscribers with instructions to access the new TVTeka channels. Upon

information and belief, PMR38 and FLVM3 were substantively identical to the channels they

replaced; the new channels even had the same name and logo as the original channels.

58.     On March 29, 2017, Plaintiffs filed a Copyright Infringement Notification with

Roku (the "Second Takedown Notice") identifying TVTeka's new Roku channels, PMR38 and

FLVM3, as infringers. The notice listed the copyrighted work that had been infringed by the

TVTeka Defendants, described where the infringing material appeared, explained how the

content infringed on Plaintiffs' copyrights, and highlighted the fact that PMR38 and FLVM3 had

been created in an obvious attempt to circumvent Roku's rules. The Second Takedown Notice

and supporting documents are attached as Exhibit 11.

59.     On March 30, 2017, Ruth J. Payton submitted a counter-notice (the "FLVM3

Counter-Notice") pursuant to 17 U.S.C. § 512(g)(3). In the FLVM3 Counter-Notice, Ms. Payton

responded to the Second Takedown Notice by stating, under penalty of perjury, that she had a

"good faith belief that removal or disablement of the content … was a mistake, the material was

misidentified and/or that the content … does not infringe the copyright of the IP Owner."  In

addition, Ms. Payton identified herself as FLVM3's designated agent and provided contact

19

information, including a phone number, physical address, and email address. The FLVM3 Counter-Notice is attached as Exhibit 12.

60.     Ms. Payton made several misrepresentations in the FLVM3 Counter-Notice. The TVTeka Defendants were not authorized to reproduce, stream, broadcast, or otherwise distribute the Copyrighted Content, and the programs streamed on FLVM3 did, indeed, infringe on NTV America and Komanda's copyrights. Moreover, upon information and belief, the FLVM3 Counter-Notice provided fake contact information, including an address that does not exist.

61.     On March 31, 2017, Samuel Medina submitted a counter-notice (the "PMR38 Counter-Notice") in response to the Second Takedown Notice. In the PMR38 Counter-Notice, Mr. Medina stated, under penalty of perjury, that the Second Takedown Notice was a mistake or misidentified the programs, and that PMR38 did not infringe Plaintiff's Copyright. In addition, Mr. Medina identified himself as PMR38's designated agent and provided contact information, including a phone number, physical address, and email address. The PMR38 Counter-Notice is attached as Exhibit 13.

62.     Similar to Ms. Payton, Mr. Medina made several misrepresentations in the PMR38 Counter-Notice. The programs streamed on PMR38 infringed on NTV America and Komanda's copyrights. And, like Ms. Payton, Mr. Medina provided falsified contact information in the PMR38 Counter-Notice, including an address that does not exist.

63.     On April 1 2017, Ivan Kuznetsov submitted a counter-notice (the "TVTEKA Counter-Notice") in response to the First Takedown Notice. In the TVTEKA Counter-Notice, Mr. Kuznetsov identified himself as TVTEKA's designated agent and provided, under penalty of perjury, a statement similar to the statements made in the FLVM3 and PMR38 Counter-Notices.

20

In addition, Mr. Kuznetsov listed limited contact information: a generic TVTeka email address. The TVTEKA Counter-Notice is attached as Exhibit 14.

64.     Like the FLVM3 and PMR38 Counter-Notices, the TVTEKA Counter-Notice made notable misrepresentations. The Copyrighted Content reproduced, streamed, broadcast, or otherwise distributed on TVTEKA did, in fact, infringe on NTV America and Komanda's copyrights. Furthermore, aside from the generic TVTeka email address, Mr. Kuznetsov did not bother to list contact information in the TVTEKA Counter-Notice.

65.     Even though TVTEKA, FLVM3, and PMR38 all infringed on Plaintiffs' copyrights, Roku, relying on the Counter-Notice Defendants' statements in the FLVM3, PMR38, and TVTEKA Counter-Notices, informed Plaintiffs of its intention to restore access to the channels within 10 to 14 business days pursuant to 17 U.S.C. § 521(g)(2)(c) unless Plaintiffs filed an action seeking to restrain the TVTeka Defendants from engaging in infringing activity relating to the material being distributed through Roku's platform.

66.     On or about April 3, 2017, the TVTeka Defendants sought to circumvent Roku's rules by creating a new channel with access code DNTA3. Upon information and belief, DNTA3 was substantively identical to the other TVTeka channels; indeed, DNTA even used the same TVTeka logo as the TVTeka Defendants' other Roku channels.

67.     Recognizing a recidivist pattern, Roku decided — before the expiration of the 10-day period provided in 17 U.S.C. § 521(g)(2)(c) — to designate the TVTeka Defendants' channels as "recidivist" channels that violated the Copyright Act and Roku's terms of service. Roku decided not to restore access to the disabled TVTEKA channels, and to automatically disable future TVTeka recidivist channels.

21

68.     The TVTeka Defendants were not discouraged by Roku's actions; instead, they pressed ahead with their campaign of recidivism. On or about April 4, 2017, the TVTeka Defendants created a new channel, JNA333. And the TVTeka Defendants did not stop there:

- On or about April 5, 2017, the TVTeka Defendants created a new channel, VNMHLMD.

- On or about April 7, 2017, the TVTeka Defendants created a new channel, ATX2.

- On or about April 10, 2017, the TVTeka Defendants created a new channel, NBGC.

- On or about April 12, 2017, the TVTeka Defendants created *four* channels:  VDEXT, EPDMS, pngee, and XTAND.

- On or about April 13, 2017, the TVTeka Defendants created a new channel, ZZBN9.

- On or about April 14, 2017, the TVTeka Defendants created two channels, ABP3D and SKMT7.

- On or about April 17, 2017, the TVTeka Defendants created two channels, GLWTVA and PTMNDA.

- On or about April 21, 2017, the TVTeka Defendants created *four* channels, CRSLZS, ELSDPA, MDRNTR, and AQDPHK.

- On or about April 25, 2017, the TVTeka Defendants created two channels, APLSTH and HLDSNR.

- On or about April 28, 2017, the TVTeka Defendants created two channels, CHPMNAZ and MRTR2R.

- On or about May 1, 2017, the TVTeka Defendants created two channels, LNRTPD and EXPTDA.

- On or about May 7, 2017, the TVTeka Defendants created *six* channels, 2NQKNPM, LHCKD, MRNDSXP, VCESM77, ZANHDF, and BPDSCH.

- On or about May 12, 2017, the TVTeka Defendants created two channels, TXTDMLP and STRMFR.

- On or about May 16, 2017, the TVTeka Defendants created two channels, MXCNSDT and PRPCHND.

- On or about May 18, 2017, the TVTeka Defendants created *four* channels, WDMTCHM, TUND4A, CPCAD5, and FRHJ9BB.

- On or about May 19, 2017, the TVTeka Defendants created two channels, DVTXXAD and GNDR22.

- On or about May 22, 2017, the TVTeka Defendants created *four* channels, STRKME3, WW55TJK, LBRSD99, and BTRDTR2.

- On or about May 24, 2017, the TVTeka Defendants created *four* channels, CHRRK99, CLDSST2, RNRX4D, and LFRDGG.

- On or about May 29, 2017, the TVTeka Defendants created *four* channels, DWNNASD, NTNCHM, NTDR56A, and LBDLX32.

- On or about May 31, 2017, the TVTeka Defendants created two channels, ARTZ45 and NKN5EE.

- On or about June 5, 2017, the TVTeka Defendants created *four* channels, ANTADPT, RCTNHH, SQQATJM, and EECXPAD.

- And on or about June 15, 2017, the TVTeka Defendants created two channels, RCKT834 and EEVEE5.

69.     To date, the TVTeka Defendants, in furtherance of their campaign of persistent unlawful activity, have added over fifty new channels (collectively, the "Recidivist Channels"). TVTeka.com advertised each of the Recidivist Channels as "new" channels. Upon information

and belief, the Recidivist Channels are substantively identical to the TVTeka's Original Roku Channels and include, among their offered programming, the Copyrighted Content.

70.     Roku disabled the Recidivist Channels as soon as Plaintiffs notified Roku of their existence.

71.     In addition to creating the Recidivist Channels, the TVTeka Defendants brazenly found other ways to stream, broadcast, or otherwise distribute the Copyrighted Content. TVTeka.com, alleging that it had lost the opportunity to provide TVTeka's services "through the fault of Roku service," encouraged TVTeka's customers to sideload TVTeka's channels in "developer mode," knowing full well that such sideloading violates Roku's terms of use and circumvents Roku's content protections that control access to copyrighted works. Moreover, the TVTeka Defendants continue to stream, broadcast, or otherwise distribute the Copyrighted Content on TVTeka.com.

## H.     The RUTVClub Takedown Notices and the RUTVClub Defendants' Recidivist Channels

72.     On March 30, 2017, Plaintiffs filed a Copyright Infringement Notification with Roku (the "Third Takedown Notice") identifying RUTVClub's Roku channel, RTVCL, as an infringer. The notice listed the copyrighted work that had been infringed by the RUTVClub Defendants, described where the infringing material appeared, and explained how the content infringed on Plaintiffs' copyrights. In addition, the Third Takedown Notice noted the relationship between the TVTeka Defendants and the RUTVClub Defendants, and stated that "the Roku channel RTVCL is operated by the same party or parties who operate the Roku channel INVID9." The Third Takedown Notice and supporting documents are attached as Exhibit 6.[12]

---

[12] The Third Takedown Notice identified multiple parties infringing on their respective copyrighted content. References to the other infringers have been redacted.

73.     Upon receipt of the Takedown Notice, Roku disabled RTVCL in compliance with 17 U.S.C. § 512(c).

74.     But the RUTVClub Defendants were not dissuaded by Roku's actions. On or about April 5, 2017, RUTVClub's customer support sent an email to RUTVClub's customers instructing them to sideload RUTVClub's Roku channel in "developer mode" – outside the confines of the Roku Store. The instructions were also posted on RUTVClub.com's FAQ section. The installation of channels for this purpose in developer mode violates Roku's terms of use and circumvents Roku's content protections that control access to copyrighted works.

75.     Moreover, the RUTVClub Defendants created a new recidivist channel, LMX5X9T, on or about April 24, 2017. RUTVClub's customer support again sent an email to RUTVClub's customers informing them of the new Roku channel and providing instructions on how to install the new channel. Roku disabled the channel on or about April 27, 2017.

## I.     Defendant's Conduct Causes Irreparable Harm

76.     The Infringing Defendants' websites, mobile applications, and channels on IPTV streaming platforms, including Roku, currently offer TVTeka and RUTVClub's subscribers the ability to access programs from over numerous Russian language networks, including Channel One and NTV.

77.     If not stopped, the Infringing Defendants' conduct will undermine Plaintiffs' relationships with their authorized licensees and interfere with Plaintiffs' ability to negotiate with those legitimate streaming and broadcasting providers. Because the Infringing Defendants do not compensate the copyright owners for the rights they exploit, TVTeka and RUTVClub are able to unfairly compete with licensed providers, which, in some instances, pay significant fees, for the rights to distribute the same content.

78.     If the Infringing Defendants continue to offer the Copyrighted Content, they will unfairly compete with NTV and continue to unlawfully interfere with Komanda's ability to distribute its content, including through authorized licensees or other legitimate distribution channels.

79.     The Infringing Defendants' unauthorized copies and unauthorized distribution further undermines Plaintiffs' ability to negotiate for quality controls in the dissemination of the Copyrighted Content.

80.     In addition, by falsely characterizing their websites, mobile applications, and channels on IPTV streaming platforms, such as their numerous channels on the Roku platform, as legitimate and lawful alternatives to licensed websites and other channels on IPTV streaming platforms, the Infringing Defendants confuse consumers and the public into believing that TVTeka and RUTVClub are authorized to broadcast or re-broadcast the Copyrighted Content – and encourage new customers (who would have otherwise streamed the Copyrighted Content from an authorized party) to subscribe to their service.

81.     The Infringing Defendants also mislead consumers by making it appear on their websites and Roku channels that they have the right to stream, broadcast, or otherwise distribute NTV America's programming by displaying the NTV Marks.

82.     The Infringing Defendants' unlawful conduct and unfair competition with licensed distribution channels have caused, and will continue to cause, Plaintiffs irreparable harm. Unless enjoined, the Infringing Defendants' illegal actions will continue.

## **FIRST CAUSE OF ACTION**
### **Copyright Infringement**

83.     Plaintiffs incorporate the allegations in paragraphs 1 through 82 as if fully set forth herein.

84.     The Copyrighted Content consists of original audiovisual works that have been fixed in a tangible medium and are copyrightable subject matter.

85.     The Copyrighted Content, which originated and in and is protected by the laws of the Russian Federation, is subject to the protections of the Copyright Act by virtue of the Berne Convention and 17 U.S.C. § 104(b). The Copyrighted Content does not need to be registered with the United States Copyright Office in order to be eligible for protection under the Copyright Act.

86.     Plaintiffs own or are exclusive licensees to the Copyrighted Content, and have exclusive legal rights in the United States to, among other rights, reproduce copies of the Copyrighted Content, distribute copies to the public of the Copyrighted Content, perform the Copyrighted Content publicly, publicly display the copyrighted Content, and make derivative works based upon the Copyrighted Content. See 17 U.S.C. § 106.

87.     Upon information and belief, the Infringing Defendants reproduced Plaintiffs' Copyrighted Content by obtaining and storing the Copyrighted Content on computer servers they own, operate, or for which the server is operated for the benefit of the Infringing Defendants, without the authorization of Plaintiffs. The reproductions were made for the sole purpose of distributing the Copyrighted Content, for commercial gain, to the Infringing Defendants' subscribers and customers, including a substantial number of subscribers and customers in the United States and in this judicial district.

88.     The Infringing Defendants performed Plaintiffs' Copyrighted Content by displaying it to TVTeka and RUTVClub's subscribers, including those in the United States and this judicial district, through at least: 1) their websites, TVTeka.com and RUTVClub.com; 2) applications on mobile devices; and 3) IPTV streaming platforms, including but not limited to

27

Roku. Specifically, the Infringing Defendants makes the Copyrighted Content available through there subscription offerings.

89. By the actions alleged above, the Infringing Defendants have directly infringed and will continue to directly infringe Plaintiffs' copyrights in the Copyrighted Content by unlawfully publicly performing and/or authorizing others to publicly perform the Copyrighted Content in the United States, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106(4).

90. By the actions alleged above, the Infringing Defendants have also directly infringed and will continue to directly infringe Plaintiffs' copyrights in the Copyrighted Content by unlawfully reproducing and distributing and/or authorizing others to reproduce and distribute the Copyrighted Works in the United States, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106(3).

91. By the actions alleged above, the Infringing Defendants have directly infringed and will continue to directly infringe Plaintiffs' copyrights in the Copyrighted Content by unlawfully publicly displaying and/or authorizing others to publicly display the Copyrighted Content in the United States, in violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106(5).

92. The Infringing Defendants do not have a license agreement and are in no way authorized to reproduce, transmit, publicly perform, or display the Copyrighted Content. Plaintiffs have not provided any authorization and the Infringing Defendants could not have obtained the rights to distribute Plaintiffs' Copyrighted Content from any other party.

93. The Infringing Defendants reproduced, transmitted, publicly performed, and displayed the Copyrighted Content with the knowledge that they were not authorized to do so. The Infringing Defendants' infringement of Plaintiffs' copyright is therefore willful and in disregard of and with indifference to Plaintiffs' valid and enforceable rights.

94. Upon information and belief, John Does 1-10 are directly infringing or at a minimum are facilitating and aiding these infringements, and John Does 1-10 are contributing to copyright infringements and are thus both directly and vicariously liable under the Copyright Act, 17 U.S.C. § 101 et seq.

95. The foregoing acts by the Infringing Defendants are causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated for or measured in money damages. Plaintiffs do not have an adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to preliminary and permanent injunctions prohibiting further infringements of the Copyrighted Works and their exclusive rights under the Copyright Act by the Infringing Defendants.

96. Plaintiffs are also entitled to damages and profits in an amount to be determined at trial together with any such other relief, including, without limitation, reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505, as deemed just, proper, and equitable.

## SECOND CAUSE OF ACTION
### Secondary Copyright Infringement

97. Plaintiffs incorporate the allegations in paragraphs 1 through 96 as if fully set forth herein.

98. The streaming, broadcast, and distribution of Plaintiffs' Copyrighted Content on the Infringing Defendants' websites, TVTeka.com, vox-ru.com, and RUTVClub.com; mobile apps; and channels on IPTV streaming platforms, including Roku, infringes Plaintiffs' exclusive rights in the Copyrighted Content.

99. The Infringing Defendants know or should have reason to know that they do not have a license agreement and are in no way authorized to stream, broadcast, or otherwise distribute the Copyrighted Content. Despite this knowledge, the Infringing Defendants

intentionally provide means, through their websites, mobile applications, and channels on IPTV streaming platforms for streaming, broadcasting, or otherwise distributing Plaintiffs' Copyrighted Content.

100.    The Infringing Defendants knowingly and willfully use their respective websites, mobile applications, and channels on IPTV streaming platforms to induce, cause, materially contribute, and aid or abet copyright infringement by allowing TVTeka and RUTVClub's subscribers and customers to reproduce, publicly perform, and display the Copyrighted Content via, *inter alia*, TVTeka.com, RUTVClub.com, and the Infringing Defendants' numerous Roku channels without authorization and infringes Plaintiffs' exclusive rights in the Copyrighted Content.

101.    The Infringing Defendants have the right and ability to control the infringing acts of TVTeka and RUTVClub's subscribers, but declined to exercise that right. Moreover, the Infringing Defendants receive a direct financial benefit from the infringing activity.

102.    The Infringing Defendants therefore induced, contributed to, and are vicariously liable for any copyright infringement committed by TVTeka and RUTVClub's subscribers, customers, or other persons that are provided access to the Infringing Defendants' services.

103.    The Infringing Defendants took these actions with full knowledge and conscious disregard of Plaintiffs' rights to the Copyrighted Content. At a minimum, the Infringing Defendants acted with willful blindness or reckless disregard of Plaintiffs' rights to the Copyrighted Content.

104.    Upon information and belief, John Does 1-10 are directly infringing or at a minimum are facilitating and aiding these secondary infringements, and John Does 1-10 are

contributing to secondary copyright infringement and are thus both directly and vicariously liable.

105.    The foregoing acts by the Infringing Defendants are causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs irreparable injury. The Court should therefore grant injunctive relief barring the Infringing Defendants from streaming, broadcasting, or otherwise distributing Plaintiffs' Copyrighted Content and damages in an amount to be determined at trial together with any such other relief, including, without limitation, reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505, as deemed just, proper, and equitable.

## THIRD CAUSE OF ACTION
### Federal Trademark Infringement

106.    Plaintiffs incorporate the allegations in paragraphs 1 through 105 as if fully set forth herein.

107.    The NTV Marks are valid and federally registered marks in the United States. They are widely used by NTV America, which has an exclusive license to the NTV Marks in the United States, as well as by third parties to whom NTV America has authorized such use. In addition, the NTV Marks have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

108.    The Infringing Defendants infringe NTV America's rights to the NTV Marks by using, without authorization, the NTV Marks on their websites, TVTeka.com and RUTVClub.com, and their Roku channels, including TVTEKA and RTVCL, to promote, market, or sell the Infringing Defendants' video streaming service, for commercial gain, to TVTeka and RUTVClub's subscribers and customers, including a substantial number of subscribers and customers in interstate and foreign commerce, in the United States and in this judicial district.

109.    The Infringing Defendants further infringe the NTV Marks by distributing NTV's broadcast, which includes the use of the NTV Marks on the lower left-hand side of the screen throughout its broadcast as well as displaying the NTV Marks during commercial breaks and advertisements.

110.    The Infringing Defendants do not have a license and are in no way authorized to use the NTV Marks. NTV America has not provided any authorization and the Infringing Defendants could not have obtained the rights to display the NTV Marks from any other party.

111.    The Infringing Defendants have misappropriated the NTV Marks for their own commercial gain and to the detriment of NTV America and NTV America's authorized licensees.

112.    The Infringing Defendants displayed the NTV Marks with the knowledge that they were not authorized to do so. The Infringing Defendants' infringement of the NTV Marks is therefore willful and in disregard of and with indifferent to NTV's valid and enforceable rights.

113.    By the actions alleged above, the Infringing Defendants' use of the NTV Marks constitutes trademark infringement pursuant to 15 U.S.C. § 1114(a)(1).

114.    The Infringing Defendants had direct and full knowledge of NTV America's prior use of and rights in the NTV Marks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

115.    The Infringing Defendants' infringement of the NTV Marks is causing and, unless enjoined by this Court, will continue to cause NTV America irreparable injury that cannot be fully compensated for or measured in money damages.

116.     NTV America is also entitled to damages in an amount to be determined at trial together with any such other relief as deemed just, proper, and equitable.

## FOURTH CAUSE OF ACTION

### Federal Unfair Competition and False Advertising

117.     Plaintiffs incorporate the allegations in paragraphs 1 through 116 as if fully set forth herein.

118.     The Infringing Defendants have deliberately and willfully attempted to trade on Plaintiffs' longstanding and hard-earned goodwill in its marks and the reputation established by Plaintiffs in connection with their products and services, as well as in order to confuse consumers as to the origin and sponsorship of TV programming and to pass off their programming and service in commerce as those authorized by Plaintiffs.

119.     More particularly, the Infringing Defendants use the NTV Marks on their websites, TVTeka.com and RUTVClub.com, their IPTV channels such as their Roku channels TVTEKA and RTVCL, to promote, market, or sell TVTeka and RUTVClub's video streaming devices for their commercial gain.

120.     The Infringing Defendants do not have a license and are in no way authorized to use the NTV Marks. NTV America has not provided any authorization and the Infringing Defendants could not have obtained the rights to display the NTV Marks from any other party.

121.     The Infringing Defendants use the NTV Marks and their misrepresentation as alleged herein to mislead consumers into thinking that TVTeka and RUTVClub are licensed or otherwise authorized by NTV to stream, broadcast, or otherwise distribute the NTV Copyrighted Content.

122.     The Infringing Defendants make other false and misleading statements on their websites, including, among others that they enter into contracts with the copyright holders of

their programs and are thereby authorized by Plaintiffs to distribute the Copyrighted Content and to use the NTV Marks.

123.     The Infringing Defendants' misleading use of the NTV Marks on their website and their Roku channels is visible by TVTeka and RUTVClub's existing subscribers and customers, including a substantial number of subscribers and customers in the United States and in this judicial district, and by potential subscribers and customers in the United States and this judicial district whose decision to subscribe to TVTeka.com and/or RUTVClub.com is influenced by the belief that they are purchasing subscriptions to authorized and licensed service providers.

124.     The advertised services, the Copyrighted Programs, and the marketing of said services, are transmitted by the Infringing Defendants' servers in interstate and foreign commerce, across state lines and national boundaries.

125.     The Infringing Defendants' conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Infringing Defendants and unauthorized programming and services with Plaintiffs and as to the origin, sponsorship or approval of the Infringing Defendants and their products and services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

126.     Defendants had direct and full knowledge of the prior use of and rights in its marks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

127.     As a result, NTV America will suffer harms, including the loss of revenues from fees it would have otherwise received from licensees. The Infringing Defendants' use of the

NTV Marks is causing and, unless enjoined by this Court, will continue to cause NTV America irreparable injury that cannot be fully compensated for or measured in money damages.

128.     NTV America is also entitled to an accounting of profits made by the Infringing Defendants on revenues relating to the NTV Marks and the NTV Copyrighted Content and damages in an amount to be determined at trial, together with any such other relief as deemed just, proper, and equitable.

## FIFTH CAUSE OF ACTION

### Unlawful Circumvention Under 17 U.S.C. § 1201(a)(1)

129.     Plaintiffs incorporate the allegations in paragraphs 1 through 128 as if fully set forth herein.

130.     Roku's policy to require consumer applications to be loaded only from Roku's Channel Store is a technical measure that effectively controls consumer access to content and allows Roku to block piratical and harmful channels.

131.     When Roku, after being notified of the Infringing Defendants' infringing conduct, disabled the Infringing Defendants' Roku channels, the Infringing Defendants devised a plan to circumvent Roku's content protections.

132.     Pursuant to said plan, the Infringing Defendants distributed the program code for Roku applications of their respective channels to their customers and provided their customers with instructions on how to circumvent Roku's content protection and install said channels through Roku's "developer mode," by which the normal Roku device settings can be changed so that the device will accept applications from non-Channel Store sources.   This use of "developer mode" to install Roku channels outside of the authorized Roku's store and for commercial use is a violation of Roku's terms of use.

133.    As a result of the distribution of these channels through the unauthorized use of "developer mode," Roku's technical measures are circumvented and the Infringing Defendants have thus been able to unlawfully distribute the Copyrighted Content using the consumers' Roku devices as a delivery vehicle – despite Roku's content protection.

134.    The Infringing Defendants' conduct constitutes circumvention of a technological measure that effectively controls access to copyrighted works, in violation of 17 U.S.C. §§ 1201(a)(a)(A) and 1201(b).

135.    Plaintiffs have sustained and will continue to sustain actual damage as a result of the Infringing Defendants' circumvention, in that, among other things, it reduces Plaintiffs' revenues, harms Plaintiffs' ability to distribute and license their works, and harms their goodwill.

136.    Plaintiffs are entitled to the Infringing Defendants' profits from their violations of 17 U.S.C. §§ 1201(a)(1) and 1201(b). Alternatively, at the Plaintiffs' election, Plaintiffs are entitled to an award of the maximum statutory damages as permitted by 17 U.S.C. § 1203(c).

137.    The Infringing Defendants' conduct, unless enjoined and restrained by the Court, will cause grave and irreparable injury to Plaintiffs, who have no adequate remedy at law. Pursuant to 17 U.S.C. § 1203, Plaintiffs are entitled to injunctive relief prohibiting further violations of 17 U.S.C. § 1201.

138.    Plaintiffs further are entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 1203.

## SIXTH CAUSE OF ACTION
### State Law Unfair Competition

139.    Plaintiffs incorporate the allegations in paragraphs 1 through 138 as if fully set forth herein.

140.     NTV America holds the exclusive license to the NTV Marks, which it has used to distribute television content, including the NTV Copyrighted Content.

141.     NTV America licenses entities in the United States, such as DirectTV and Cablevision, to distribute the NTV Copyrighted Content and use the NTV Marks.  These entities offer the NTV Copyrighted Content to their subscribers in exchange for a subscription fee.

142.     The Infringing Defendants never obtained permission from NTV America to use the NTV Marks or distribute the NTV Copyrighted Content, nor could they have obtained such permission from any other party.

143.     The Infringing Defendants nevertheless use the NTV Marks and distribute the NTV Copyrighted Content in a deliberate and willful attempt to trade on Plaintiffs' longstanding and hard-earned goodwill in its marks and the reputation established by Plaintiffs in connection with their products and services, as well as in order to confuse consumers as to the origin and sponsorship of TV programming and to pass off their programming and service in commerce as those authorized by Plaintiffs.

144.     More specifically, the Infringing Defendants use the NTV marks on their websites, TVTeka.com and RUTVClub.com, their IPTV channels such as their Roku channels TVTEKA and RTVCL, to promote, market, or sell TVTeka and RUTVClub's video streaming devices for their commercial gain.

145.     The Infringing Defendants use the NTV Marks and their misrepresentation as alleged herein to mislead consumers into thinking that TVTeka and RUTVClub are licensed or otherwise authorized by NTV to stream, broadcast, or otherwise distribute the NTV Copyrighted Content.

146.     The Infringing Defendants also make other false and misleading statements on their websites.  They state, inter alia, that the Infringing Defendants enter into contracts with the copyright holders of their programs.

147.     The Infringing Defendants' misleading use of the NTV Marks on their website and their Roku channels is visible by TVTeka and RUTVClub's existing subscribers and customers, including a substantial number of subscribers and customers in the United States and in this judicial district, and by potential subscribers and customers in the United States and this judicial district whose decision to subscribe to TVTeka.com and/or RUTVClub.com is influenced by the belief that they are purchasing subscriptions to authorized and licensed service providers.

148.     The Infringing Defendants' misleading use of the NTV Marks is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants and unauthorized programming and services with Plaintiffs and as to the origin, sponsorship, or approval of the Infringing Defendants and their products and services.

149.     As a result, NTV America will suffer harms.  The Infringing Defendants' misleading use of the NTV Marks has misappropriated the value and good will of the NTV Marks and will induce consumers to purchase subscriptions from the Infringing Defendants instead of purchasing a subscription from a licensee authorized by NTV America.

150.     The Infringing Defendants' misappropriation of NTV Marks in connection with the sale of goods in a way that is likely to communicate a false designation of the origin of those goods is a violation of the New Jersey Fair Trade Act, N.J.S.A. 56:4-1 and common law unfair competition law.

151.    The Infringing Defendants' conduct, unless enjoined and restrained by the Court, will cause grave and irreparable injury to Plaintiffs, who have no adequate remedy at law.

152.    Plaintiffs further are entitled to actual damages and for any and all profits derived by the Infringing Defendants from its infringement of NTV America's exclusive rights to the NTV Marks, as well as the recovery by Plaintiffs of their attorneys' fees and full costs in this action.

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants as follows:

A.      Preliminarily and permanently enjoining the Infringing Defendants and their officers, agents, servants, and employees and all those in active concert or participation with them, from (i) reproducing, transmitting, publicly performing, broadcasting and/or displaying Plaintiffs' Copyrighted Content; (ii) inducing, encouraging, marketing, causing, facilitating, and/or materially contributing to the unauthorized reproduction, public performance, broadcast, and/or display of Plaintiffs' Copyrighted Content by others; and (iii) using and infringing the NTV Marks;

B.      Awarding Plaintiffs actual or statutory damages, in an amount to be determined at trial;

C.      Awarding Plaintiffs any profits made by the Infringing Defendants attributable to their violations not taken into account when computing Plaintiffs' actual damages;

D.      Awarding Plaintiffs restitution of money or proper and the disgorgement of any

profits acquired by the Infringing Defendants as a result of their unfair competition;

E.      Awarding Plaintiffs their costs of prosecuting this action, including their

attorneys' fees;

F.      Awarding Plaintiffs prejudgment interest; and

G.      Awarding Plaintiffs any such other and further relief as the Court deems just,

proper, and equitable.


Dated: July 31, 2017

                              Respectfully submitted,

                              LEWIS BAACH KAUFMANN MIDDLEMISS PLLC


                              By:      /s/ David G. Liston

                              David G. Liston
                              Ronald Abramson
                              Anthony M. Capozzolo
                              Ari J. Jaffess
                              The Chrysler Building
                              405 Lexington Avenue, 62nd Floor
                              New York, NY  10174
                              Tel: (212) 826-7001

                              *Attorneys for Plaintiffs, Art Distribution Inc. d/b/a
                              NTV America and Komanda LLC*

# EXHIBIT 1

# United States of America
## United States Patent and Trademark Office

# HTB

**Reg. No. 4,148,232**

**Registered May 29, 2012**

**Int. Cls.: 35, 38 and 41**

**SERVICE MARK**

**PRINCIPAL REGISTER**



*David J. Kappos*

Director of the United States Patent and Trademark Office

NTV BROADCASTING CO. (RUSSIAN FED. JOINT STOCK COMPANY)
12, UL. AKADEMIKA KOROLEVA
127427 MOSCOW, RUSSIAN FED.

FOR: TELEVISION ADVERTISING, NAMELY, PROVIDING TELEVISION ADVERTISING FOR OTHERS, PRODUCTION OF TELEVISION ADVERTISING, AND RENTAL OF TELEVISION ADVERTISING SPACE, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-17-1994; IN COMMERCE 12-17-2002.

FOR: TELECOMMUNICATIONS, NAMELY, TELEVISION BROADCASTING; CABLE TELEVISION BROADCASTING; SUBSCRIPTION TELEVISION BROADCASTING; BROADCASTING SERVICES, NAMELY, PROVIDING INTERACTIVE DELIVERY OF TELEVISION, AUDIO, AND VIDEO OVER DIGITAL NETWORKS; BROADCASTING PROGRAMS AND VIDEO VIA THE INTERNET; STREAMING OF VIDEO MATERIAL ACROSS BROADBAND NETWORKS AND THE INTERNET; TELEVISION, SATELLITE TELEVISION, CABLE TELEVISION, AUDIO AND INTERNET BROADCASTING SERVICES RENDERED THROUGH TERRESTRIAL BROADCASTING SYSTEMS, SATELLITES, AND THE INTERNET; TRANSMISSION OF AUDIO, VIDEO, AND DATA MATERIAL TO WIRELESS COMMUNICATION DEVICES, HANDHELD COMPUTERS, PERSONAL DIGITAL ASSISTANTS, AND MOBILE AND CELLULAR TELEPHONES; ELECTRONIC TRANSMISSION OF DATA, DOCUMENTS, MESSAGES, TEXT, SOUND, IMAGES, GRAPHICS, ENTERTAINMENT MEDIA CONTENT, AND EDUCATIONAL MEDIA CONTENT VIA A GLOBAL COMPUTER NETWORK; VIDEO-ON-DEMAND TRANSMISSION SERVICES; MOBILE MEDIA IN THE NATURE OF ELECTRONIC TRANSMISSION OF ENTERTAINMENT MEDIA CONTENT; AND TELETEXT SERVICES, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 1-17-1994; IN COMMERCE 9-26-2002.

FOR: ENTERTAINMENT SERVICES, NAMELY, PRODUCTION OF TELEVISION ENTERTAINMENT AND AUDIO AND VIDEO RECORDINGS; PRODUCTION OF MOTION PICTURE FILMS, IMAGES, AND SOUND RECORDINGS, NAMELY, PRODUCTION OF MOVIES AND VIDEO FILMS; PRODUCTION OF ONGOING TELEVISION PROGRAMS; INTERACTIVE ONLINE ENTERTAINMENT, NAMELY, PROVIDING A WEB SITE ALLOWING THE SAMPLING, STREAMING, AND DOWNLOADING OF AUDIO AND VISUAL MATERIAL TO PERSONAL COMPUTERS AND PORTABLE MEDIA PLAYERS; DISTRIBUTION OF TELEVISION PROGRAMMING FOR OTHERS TO CABLE, TERRESTRIAL, OR SATELLITE

**Reg. No. 4,148,232**   TELEVISION SYSTEMS; INTERNET PORTAL SERVICES, NAMELY, PROVIDING A WIDE RANGE OF INFORMATION IN THE FIELDS OF ENTERTAINMENT, CULTURAL, AND SPORTING EVENTS AND FEATURING LINKS TO NEWS STORIES AND ARTICLES IN THE FIELD OF CURRENT EVENTS AND ENTERTAINMENT VIA THE INTERNET, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 1-17-1994; IN COMMERCE 3-17-2003.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

THE NON-LATIN CHARACTERS IN THE MARK TRANSLITERATE TO "NTV" AND THIS HAS NO MEANING IN A FOREIGN LANGUAGE.

OWNER OF U.S. REG. NO. 4,004,267.

SER. NO. 77-845,683, FILED 10-9-2009.

ERIN FALK, EXAMINING ATTORNEY

---

### REQUIREMENTS TO MAINTAIN YOUR FEDERAL
### TRADEMARK REGISTRATION

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.\* *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# EXHIBIT 2



# United States of America
## United States Patent and Trademark Office

**Reg. No. 4,004,267**

**Registered Aug. 2, 2011**

**Int. Cls.: 35, 38 and 41**

**SERVICE MARK**

**PRINCIPAL REGISTER**

NTV BROADCASTING CO. (RUSSIAN FED. JOINT STOCK COMPANY)
12, UL. AKADEMIKA KOROLEVA
127427 MOSCOW, RUSSIAN FED.

FOR: TELEVISION ADVERTISING, NAMELY, PROVIDING TELEVISION ADVERTISING FOR OTHERS, PRODUCTION OF TELEVISION ADVERTISING, AND RENTAL OF TELEVISION ADVERTISING SPACE, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-17-1994; IN COMMERCE 12-17-2002.

FOR: TELECOMMUNICATIONS, NAMELY, TELEVISION BROADCASTING; CABLE TELEVISION BROADCASTING; SUBSCRIPTION TELEVISION BROADCASTING; BROADCASTING SERVICES, NAMELY, PROVIDING INTERACTIVE DELIVERY OF TELEVISION, AUDIO, AND VIDEO OVER DIGITAL NETWORKS; BROADCASTING PROGRAMS AND VIDEO VIA THE INTERNET; STREAMING OF VIDEO MATERIAL ACROSS BROADBAND NETWORKS AND THE INTERNET; TELEVISION, SATELLITE TELEVISION, CABLE TELEVISION, AUDIO AND INTERNET BROADCASTING SERVICES RENDERED THROUGH TERRESTRIAL BROADCASTING SYSTEMS, SATELLITES, AND THE INTERNET; TRANSMISSION OF AUDIO, VIDEO, AND DATA MATERIAL TO WIRELESS COMMUNICATION DEVICES, HANDHELD COMPUTERS, PERSONAL DIGITAL ASSISTANTS, AND MOBILE AND CELLULAR TELEPHONES; ELECTRONIC TRANSMISSION OF DATA, DOCUMENTS, MESSAGES, TEXT, SOUND, IMAGES, GRAPHICS, ENTERTAINMENT MEDIA CONTENT, AND EDUCATIONAL MEDIA CONTENT VIA A GLOBAL COMPUTER NETWORK; VIDEO-ON-DEMAND TRANSMISSION SERVICES; MOBILE MEDIA IN THE NATURE OF ELECTRONIC TRANSMISSION OF ENTERTAINMENT MEDIA CONTENT; AND TELETEXT SERVICES, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 1-17-1994; IN COMMERCE 9-26-2002.

FOR: ENTERTAINMENT SERVICES, NAMELY, PRODUCTION OF TELEVISION ENTERTAINMENT AND AUDIO AND VIDEO RECORDINGS; PRODUCTION OF MOTION PICTURE FILMS, IMAGES, AND SOUND RECORDINGS, NAMELY, PRODUCTION OF MOVIES AND VIDEO FILMS; PRODUCTION OF ONGOING TELEVISION PROGRAMS; DISTRIBUTION OF TELEVISION PROGRAMMING FOR OTHERS TO CABLE, TERRESTRIAL, OR SATELLITE TELEVISION SYSTEMS; INTERNET PORTAL SERVICES, NAMELY, PROVIDING LINKS TO A WIDE RANGE OF INFORMATION IN THE FIELDS OF CURRENT EVENT NEWS, ENTERTAINMENT, CULTURAL, AND SPORTING EVENTS, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 1-17-1994; IN COMMERCE 3-17-2003.

THE MARK CONSISTS OF THE STYLIZED CYRILLIC LETTERS "NTV" IN WHICH THE LETTER "T" IS THE TALLEST LETTER AND A CIRCLE WITH A REFLECTION SPOT SUPERIMPOSED ON THE BOTTOM HALF OF THE LETTER "T".



*David J. Kappos*

Director of the United States Patent and Trademark Office

**Reg. No. 4,004,267**   THE NON-LATIN CHARACTERS IN THE MARK TRANSLITERATE TO "NTV" AND THIS
HAS NO MEANING IN A FOREIGN LANGUAGE.

SER. NO. 77-776,289, FILED 7-8-2009.

ALYSSA STEEL, EXAMINING ATTORNEY

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL**
> **TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE**
> **DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

> *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

> *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between the 9th and 10th years after the registration date.*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

> **The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or reminder of these filing requirements.**

***ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. *See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

# EXHIBIT 3

DATE: **March 14, 2017**

TO: Roku Inc.

    12980 Saratoga Avenue, Suite D

    Saratoga, California 95070

    Attn: Copyright Agent

    E-mail: copyright@roku.com

I declare UNDER PENALTY OF PERJURY that:

1. I am the owner, or an agent authorized to act on behalf of the owner, which owner's name is

**Komanda LLC and NTV America** ("IP Owner"), of the following copyrighted work.

Identify, in sufficient detail, the copyrighted work that you claim has been infringed upon, including providing any registration number or other identification, if available. Attach applicable documents, if any.

**See the following attached documents for information about Komanda LLC's and NTV America's respective copyrighted works:**

- **March 13, 2017 Letter from David Guerrero Liston (the "Letter")**
- **March 13, 2017 Affidavit from Gregory Moscow (the "Affidavit")**

2. I have a good faith belief that the content described below and being made available to end users of the Company's products is not authorized by the IP owner, its agent, or the law, and therefore infringes the IP Owner's rights:

Identify the content that you claim is infringing the copyright identified above.

**See the attached Letter and the Affidavit.**

Where does the alleged infringing material appear? Please provide sufficient information to help us locate the content you are reporting.

**The infringing materials appear on the following Roku channels:** Redacted **Redacted** , **INVID09, TVTEKA, DTV12,** Redacted Redacted

**See the attached Letter and Affidavit for additional information.**

Please describe how the content infringes your or the IP owner's rights (this question may assist us with processing your claim and eliminate the potential need for follow-up questions should your notice be unclear).

**The content is infringing on Komanda LLC's and NTV America's respective rights by distributing their respective copyrighted programming without authorization.**

**See the attached Letter and Affidavit for additional information.**

Identify, if possible, information sufficient to permit the Company to notify the channel application developer and/or service provider of the allegedly infringing content.

**See Schedule 1 in the attached Letter.**

3. I acknowledge that this Notice, including my contact information, may be provided to the channel application developer and/or service provider associated with the alleged infringing content.

4. I may be contacted as follows:

My Name: **David Guerrero Liston, Esq.**

My Telephone: **(212) 822-0160**

Company or Other IP Owner (if different from me):

**Lewis Baach pllc Kaufman Middlemiss**
**The Chrysler Building**
**405 Lexington Avenue, 62nd Floor**
**New York, New York 10174**

Email: **david.liston@lewisbaach.com**


Check one of the boxes below.

The information I have provided in this statement is accurate.

I agree: ☑

I disagree: ☐

Electronic or Physical Signature:

 **/s David Guerrero Liston**



**Lewis | Baach** pllc
**Kaufmann Middlemiss**

David Guerrero Liston
212 822 0160
david.liston@lewisbaach.com

March 13, 2017

**VIA EMAIL AND FEDERAL EXPRESS**

Roku, Inc.
Attn: Douglas Weiss, Esq.
Director, Business & Legal Affairs
150 Winchester Circle
Los Gatos, California 95032

Roku, Inc.
Attn: Copyright Agent
12980 Saratoga Avenue, Suite D
Saratoga, California 95070

> Re:   Notice of Copyright Infringement Through Roku Platform

Dear Mr. Weiss and Copyright Agent:

We represent Komanda LLC, ("Komanda") and NTV America ("NTV") (collectively, the Notifying Parties). We write to notify you of entities that are using Roku, Inc. ("Roku")'s platform to distribute Komanda's and NTV's content without authorization.

Komanda is the worldwide copyright holder for certain content that is shown on Russian language television, including content that is shown on the Russian television network, Channel One. Among the programs to which Komanda is the copyright holder are the Russian television programs: Davai Pogenimsya (Давай Поженимся), Modny Prigovor (Модный Приговор), Segodnya Vecherom (Сегодня Вечером), and Kontrol'naja Zakupka (Контрольная Закупка) (the "Komanda Copyrighted Content").

NTV is the exclusive copyright holder in the United States for certain content that is shown on Russian language television, including content that is shown on the Russian television network, NTV. Among the programs to which NTV is the copyright holder in the United States are the Russian television programs: Detektiv «Pasečnik» (Детектив «Пасечник»), Mesto vstreči (Место встречи), Serial «Vozvrašenie Muhtara» (Сериал «Возвращение Мухтара»), Segodnja (Сегодня), Govorim I Pokazyvayem (Говорим И Показываем), Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей), Uchitel' v zakone (Учитель в законе), and Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие) (the "NTV Copyrighted Content").

Komanda and NTV have launched an investigation to identify parties who are streaming their respective content without authorization. As a result of that investigation, the Notifying Parties have identified five entities, as set forth in Schedule 1 to this letter (the "Pirates") who are distributing, without authorization, the Komanda Copyrighted Content and the NTV Copyrighted Content, through the use of channels the Pirates created on the Roku platform.

The Pirates are rebroadcasting numerous Russian TV networks through their respective Roku channels, including the TV networks Channel One and NTV. The Pirates distribute the programming through the Roku platform to a subscriber through the live rebroadcast of the Russian TV networks, the archived rebroadcast of the Russian TV networks, and/or through a video on demand library.

Gregory Moscow, an Investigative Analyst at our firm, conducted an investigation that identified the Pirates. Enclosed with this letter is Mr. Moscow's affidavit, which includes screenshots that demonstrate the Pirates' use of the Roku platform to distribute the Komanda Copyrighted Content and the NTV Copyrighted Content.

Komanda has not authorized any of the Pirates, directly or indirectly, to distribute the Komanda Copyrighted Content in any manner whatsoever, including without limitation, the right to distribute the Komanda Copyrighted Content through any web streaming platform such as the Roku platform.

NTV has not authorized any of the Pirates, directly or indirectly, to distribute the NTV Copyrighted Content in any manner whatsoever, including without limitation, the right to distribute the NTV Copyrighted Content through any web streaming platform such as the Roku platform.

As Komanda and NTV did not authorize the Pirates to distribute the content, it is reasonable to assume that the Pirates are also distributing the content of other rightsholders without their authorization.

In light of the evidence that each of the Pirates is streaming the Komanda Copyrighted Content and the NTV Copyrighted Content without the authorization of Komanda or NTV, we respectfully request that Roku immediately disable each of the Pirate's channels on the Roku platform as well as on any devices or services offered by Roku.

We would appreciate if you provide us with confirmation that Roku has taken the requested actions to prevent the continued use of Roku's services to facilitate the Pirates' infringement of the Komanda Copyrighted Content and the NTV Copyrighted Content.

Please do not hesitate to contact me at 212-822-0160 or david.liston@lewisbaach.com if you have any questions or if there is any additional information we can provide to you.

Respectfully submitted,

David Guerrero Liston

cc:     Alex G. Patchen
        Anthony M. Capozzolo
        Ari. J. Jaffess

## Schedule 1

**Redacted**

4. <u>TVTEKA</u>
Roku Channels - INVID9, TVTEKA, DTV12
c/o ARIEL IMPEX LP
Franz-Joseph-Str. 11
80801 Munich, Germany

Website - tvteka.net
Email Address - copyright@tvteka.com

**Redacted**

# AFFIDAVIT OF GREGORY MOSCOW

STATE OF NY       :
: SS.:
COUNTY OF NY    :

Gregory Moscow, being duly sworn, deposes and says:

1. I am an Investigative Analyst at the law firm Lewis Baach pllc Kaufman Middlemiss.

2. Our firm represents Komanda LLC ("Komanda") and NTV America ("NTV") (collectively, the Notifying Parties).

3. I submit this affidavit in support of the March 13, 2017 letter being submitted on behalf of the Notifying Parties notifying Roku, Inc. ("Roku") of entities that are using the Roku platform to distribute Komanda's and NTV's content without authorization (the "Notice Letter").

4. Komanda has advised our firm that it is the worldwide copyright holder for a number of programs that are shown on the Russian television network, Channel One. Among the programs that are shown on Channel One to which Komanda is the copyright holder are: Davai Pogenimsya (Давай Поженимся), Modny Prigovor (Модный Приговор), Segodnya Vecherom (Сегодня Вечером), and Kontrol'naja Zakupka (Контрольная Закупка) (the "Komanda Copyrighted Content").

5. NTV has advised our firm that it is the exclusive copyright holder in the United States for a number of programs that are shown on the Russian television network, NTV. Among the programs that are shown on NTV to which NTV is the copyright holder in the United States are: Detektiv «Pasečnik» (Детектив «Пасечник»), Mesto vstreči (Место встречи), Serial «Vozvrašenie Muhtara» (Сериал «Возвращение Мухтара»), Segodnja (Сегодня), Govorim I Pokazyvayem (Говорим И Показываем), Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей),

Uchitel' v zakone (Учитель в законе), and Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие) (the "NTV Copyrighted Content").

6. Komanda and NTV have requested that our firm assist them in identifying parties that are streaming, without authorization, the Komanda Copyrighted Content and the NTV Copyrighted Content over the Internet, including through IPTV streaming platforms such as Roku.

7. As a part of this investigation, we identified five entities that are streaming the Komanda Copyrighted Content and the NTV Copyrighted Content (the "Pirates").

8. The Pirates are rebroadcasting numerous Russian TV networks through their respective Roku channels, including the networks Channel One and NTV. The Pirates distribute the programming through the Roku platform to a subscriber through the live rebroadcast of the Russian TV networks, the archived rebroadcast of the Russian TV networks, and/or through a video on demand library.

9. With respect to each of the Pirates, as set forth below, and as seen in the attached screenshots (Exhibits 1-5), I was able to stream the Komanada Copyrighted Content and the NTV Copyrighted Content from each of the Pirate's respective Roku channels. Each of the screenshots in Exhibits 1-5 are true and accurate screen captures that I personally captured from the Roku platform or the Pirates' websites, without making any substantive edits.

**Redacted**

2

**Redacted**



**Redacted**

13. <u>TVTEKA</u> – Exhibit 4

    a. On March 2, 2017, I used the Roku channel access code "INVID9" to add the TVTEKA channel to a Roku account. (Ex. 4 at p. 1.)

    b. RUTV Club has duplicate channels that can be accessed using Roku channel access codes "TVTEKA" or "DTV12."

    c. <u>Komanda</u>

        i. I was able to watch the program Modny Prigovor (Модный Приговор), which was being shown live on Channel One, through the Roku channel INVID9. (Ex. 4 at p. 3.)

        ii. I was able to watch the program Davai Pogenimsya (Давай Поженимся) through TVTEKA's archive, which was originally shown live on Channel One, through the Roku channel INVID9. (Ex. 4 at p. 4.)

    d. <u>NTV</u>

        i. I was able to watch the program Detektiv «Pasečnik» (Детектив «Пасечник»), which was being shown live on NTV, through the Roku channel INVID9. (Ex. 4 at p. 5.)

        ii. I was able to watch the program, Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие) through TVTEKA's archive, which was originally shown live on NTV, through the Roku channel INVID9. (Ex. 4 at p. 6.)

**Redacted**

**Redacted**

Gregory Moscow

Sworn to before me this
17th day of March, 2017

Notary Public

ANTHONY MATTHEW CAPOZZOLO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 02CA6324744
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES 05-11-2019

# EXHIBIT 1

**Redacted**

**Redacted**

**Redacted**

**Redacted**

**Redacted**

**Redacted**

**Redacted**

# EXHIBIT 2

**Redacted**

**Redacted**

**Redacted**

**Redacted**

**Redacted**

# EXHIBIT 3

**Redacted**

**Redacted**

**Redacted**

**Redacted**

**Redacted**

Case 2:17-cv-05592 Document 1-4 Filed 07/31/17 Page 82 of 45 PageID: 81

# EXHIBIT 4









**March 2, 2017 – Modny Prigovor (Модный Приговор) – Live Broadcast**





**March 1, 2017 – Davai Pogenimsya (Давай Поженимся) – Archived Broadcast**





**March 2, 2017 – Detektiv «Pasečnik» (Детектив «Пасечник») – Live Broadcast**





**March 1, 2017 – Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие) – Archived Broadcast**





Case 2:17-cv-05592 Document 1-4 Filed 07/31/17 Page 39 of 45 PageID: 88

# EXHIBIT 5

**Redacted**

**Redacted**



**Redacted**

**Redacted**

**Redacted**

**Redacted**

# EXHIBIT 4





# EXHIBIT 5





# EXHIBIT 6

DATE: **March 30, 2017**

TO: Roku Inc.

    12980 Saratoga Avenue, Suite D

    Saratoga, California 95070

    Attn: Copyright Agent

    E-mail: copyright@roku.com

I declare UNDER PENALTY OF PERJURY that:

1. I am the owner, or an agent authorized to act on behalf of the owner, which owner's name is

**Komanda LLC and NTV America** ("IP Owner"), of the following copyrighted work.

Identify, in sufficient detail, the copyrighted work that you claim has been infringed upon, including providing any registration number or other identification, if available. Attach applicable documents, if any.

**See the following attached documents for information about Komanda LLC's and NTV America's respective copyrighted works:**

- **March 30, 2017 Letter from David Guerrero Liston (the "Letter")**
- **March 30, 2017 Affidavit from Gregory Moscow (the "Affidavit")**

2. I have a good faith belief that the content described below and being made available to end users of the Company's products is not authorized by the IP owner, its agent, or the law, and therefore infringes the IP Owner's rights:

Identify the content that you claim is infringing the copyright identified above.

**See the attached Letter and the Affidavit.**

Where does the alleged infringing material appear? Please provide sufficient information to help us locate the content you are reporting.

**The infringing materials appear on the Roku channels with the following access codes:** <span style="background:#999">     Redacted     </span> **RTVCL.**

**See the attached Letter and Affidavit for additional information.**

Please describe how the content infringes your or the IP owner's rights (this question may assist us with processing your claim and eliminate the potential need for follow-up questions should your notice be unclear).

**The content is infringing Komanda LLC's and NTV America's respective rights by distributing their respective copyrighted programming without authorization.**

**See the attached Letter and Affidavit for additional information.**

Identify, if possible, information sufficient to permit the Company to notify the channel application developer and/or service provider of the allegedly infringing content.

**See Schedule 1 in the attached Letter.**

3. I acknowledge that this Notice, including my contact information, may be provided to the channel application developer and/or service provider associated with the alleged infringing content.

4. I may be contacted as follows:

My Name: **David Guerrero Liston, Esq.**

My Telephone: **(212) 822-0160**

Company or Other IP Owner (if different from me):

**Lewis Baach pllc Kaufman Middlemiss**
**The Chrysler Building**
**405 Lexington Avenue, 62nd Floor**
**New York, New York 10174**

Email: **david.liston@lewisbaach.com**


Check one of the boxes below.

The information I have provided in this statement is accurate.

I agree: ☑

I disagree: ☐

Electronic or Physical Signature:

 **/s David Guerrero Liston**



David Guerrero Liston
212 822 0160
david.liston@lewisbaach.com

March 30, 2017

<u>**VIA EMAIL**</u>

Roku, Inc.
Attn: Douglas Weiss, Esq.
Director, Business & Legal Affairs
150 Winchester Circle
Los Gatos, California 95032

   **Re:  Notice of Copyright Infringement Through Roku Platform**

Dear Mr. Weiss:

  We represent Komanda LLC, ("Komanda") and NTV America ("NTV America") (collectively, the Notifying Parties).  We write to notify you of entities that are using Roku, Inc. ("Roku")'s platform to distribute Komanda's and NTV's content without authorization.

  Komanda is the worldwide copyright holder for certain content that is shown on Russian language television, including content that is shown on the Russian television network, Channel One. Among the programs to which Komanda is the copyright holder are the Russian television programs Davai Pogenimsya (Давай Поженимся), Kontrolnaya Zakupka (Контрольная Закупка), and Modny Prigovor (Модный Приговор) (the "Komanda Copyrighted Content").

  NTV America is the exclusive copyright holder in the United States for certain content that is shown on Russian language television, including content that is shown on the Russian television network, NTV.  Among the programs to which NTV America is the copyright holder in the United States are the Russian television programs: Ostrosyuzhetnyy serial «Lesnik» (Остросюжетный сериал «Лесник»), Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей), Serial «Svideteli» (Сериал «Свидетели»), and Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие) (the "NTV Copyrighted Content").

  Komanda and NTV have launched an investigation to identify parties who are streaming their respective content without authorization.  As a result of that investigation, the Notifying Parties have identified two entities, as set forth in Schedule 1 to this letter (the "Pirates") who are distributing, without authorization, the Komanda Copyrighted Content and the NTV Copyrighted Content.

The Pirates are rebroadcasting numerous Russian TV networks, including Channel One and NTV America on their respective Roku channels. The Pirates distribute the programming through the Roku platform to a subscriber through the live rebroadcast of the Russian TV networks, the archived rebroadcast of the Russian TV networks, and/or through a video on demand library.

Gregory Moscow, an Investigative Analyst at our firm, conducted an investigation that identified the Pirates. Enclosed with this letter is Mr. Moscow's affidavit, which includes screenshots that demonstrate the Pirates' use of the Roku platform to distribute the Komanda Copyrighted Content and the NTV Copyrighted Content.

Komanda has not authorized any of the Pirates, directly or indirectly, to distribute the Komanda Copyrighted Content in any manner whatsoever, including without limitation, the right to distribute the Komanda Copyrighted Content through any web streaming platform such as the Roku platform.

NTV has not authorized any of the Pirates, directly or indirectly, to distribute the NTV Copyrighted Content in any manner whatsoever, including without limitation, the right to distribute the NTV Copyrighted Content through any web streaming platform such as the Roku platform.

As Komanda and NTV did not authorize the Pirates to distribute the content, it is reasonable to assume that the Pirates are also distributing the content of other rightsholders without their authorization.

In light of the evidence that each of the Pirates is streaming the Komanda Copyrighted Content and the NTV Copyrighted Content without the authorization of Komanda or NTV, we respectfully request that Roku immediately disable each of the Pirate's channels on the Roku platform as well as on any devices or services offered by Roku.

Please note, upon information and belief, that each of these Pirates is operated by the same parties responsible for the Roku Channels identified in my March 13 and March 20 DMCA notices. Specifically, we believe that **Redacted** the Roku channel RTVCL is operated by the same party or parties who operate the Roku channel INVID9. These parties (the "Related Pirates") were notified of their infringement by Roku after my March 13 and March 20 DMCA notices, but nonetheless continued to stream the Komanda Copyrighted Content and the NTV Copyrighted Content. Indeed, the screenshots attached to Mr. Moscow's affidavit demonstrate that the Pirates distributed the Komanda Copyrighted Content and the NTV Copyrighted Content as recently as March 24, 2017, and they are continuing to distribute the content today.

Despite being aware of the first two DMCA notices, the Pirates have continued to use "alternate" channels as a way to continue infringing our clients' content. Based on this, we respectfully request that you consider the Pirates identified in this letter, as well the Related Pirates identified above, to be repeat offenders and that you permanently terminate their accounts.

We would appreciate if you provide us with confirmation that Roku has taken the requested actions to prevent the continued use of Roku's services to facilitate the Pirates' infringement of the Komanda Copyrighted Content and the NTV Copyrighted Content.

Please do not hesitate to contact me at 212-822-0160 or david.liston@lewisbaach.com if you have any questions or if there is any additional information we can provide to you.

Respectfully submitted,

David Guerrero Liston

cc:     Alex G. Patchen
        Anthony M. Capozzolo
        Ari J. Jaffess

**Schedule 1**



3. <u>RUTV Club</u>
   Roku Channel Access Code - RTVCL
   8171 Yonge St. # 357, Markham, ON, L3T 2C6
   Website - rutvclub.com
   Contact Number - (647) 847-1220
   Email Address - support@rutvclub.com

## AFFIDAVIT OF GREGORY MOSCOW

STATE OF New York :
                 : SS.:
COUNTY OF New York :

Gregory Moscow, being duly sworn, deposes and says:

1. I am an Investigative Analyst at the law firm Lewis Baach pllc Kaufman Middlemiss.

2. Our firm represents Komanda LLC ("Komanda") and NTV America ("NTV") (collectively, the Notifying Parties).

3. I submit this affidavit in support of the Notifying Parties' March 30, 2017 letter to Roku, Inc. ("Roku") regarding entities that are using the Roku platform to distribute Komanda's and NTV's content without authorization (the "Notice Letter").

4. Komanda has advised our firm that it is the worldwide copyright holder for a number of programs that are shown on the Russian television network, Channel One. Among the programs that are shown on Channel One to which Komanda is the copyright holder are: Davai Pogenimsya (Давай Поженимся), Kontrolnaya Zakupka (Контрольная Закупка), and Modny Prigovor (Модный Приговор) (the "Komanda Copyrighted Content").

5. NTV has advised our firm that it is the exclusive copyright holder in the United States for a number of programs that are shown on the Russian television network, NTV. Among the programs that are shown on NTV to which NTV is the copyright holder in the United States are: Ostrosyuzhetnyy serial «Lesnik» (Остросюжетный сериал «Лесник»), Ulicy Razbityh Fonarej (Улицы Разбитых Фонарей), Serial «Svideteli» (Сериал «Свидетели»), and Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие) (the "NTV Copyrighted Content").

6. Komanda and NTV have requested that our firm assist them in identifying parties that are streaming, without authorization, the Komanda Copyrighted Content and the NTV Copyrighted Content over the Internet, including through IPTV streaming platforms such as Roku.

7. As a part of this investigation, we identified two entities that are streaming the Komanda Copyrighted Content and the NTV Copyrighted Content (the "Pirates").

8. The Pirates are rebroadcasting numerous Russian TV networks through their respective Roku channels, including the networks Channel One and NTV. The Pirates distribute the programming through the Roku platform to a subscriber through the live rebroadcast of the Russian TV networks, the archived rebroadcast of the Russian TV networks, and/or through a video on demand library.

9. With respect to each of the Pirates, as set forth below, and as seen in the attached screenshots (Exhibits 1-3), I was able to stream the Komanada Copyrighted Content and the NTV Copyrighted Content from each of the Pirate's respective Roku channels. Each of the screenshots in Exhibits 1-3 are true and accurate screen captures that I personally captured from the Roku platform or the Pirates' websites, without making any substantive edits.

**Redacted**

**Redacted**

12. RUTVClub – Exhibit 3

    a. On March 2 and 24, 2017, I used the Roku channel access code "RTVCL" to add RUTVClub's channel to a Roku account. (Ex. 3 at p. 1.)

    b. During the same time period, I also accessed the Roku channel with access code INVID9. RUTVClub's Roku channel looks identical to the Roku channel, INVID9. (Ex. 3 at p. 5.)

    c. Komanda

        i. On March 24, I was able to watch the program Modny Prigovor (Модный Приговор) through RUTVClub's archive, which was originally shown live on Channel One on March 23, through the Roku channel RTVCL. (Ex. 3 at p. 2.)

        ii. On March 24, I was able to watch the program Kontrolnaya Zakupka (Контрольная Закупка) through RUTVClub's archive, which was originally shown live on Channel One on March 22, through the Roku channel RTVCL. (Ex. 3 at p. 3.)

    d. NTV

        i. On March 24, I was able to watch the program Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие), which was being shown live on NTV, through the Roku channel RTVCL. (Ex. 3 at p. 4.)

Gregory Moscow

Sworn to before me this
26 day of March, 2017

Notary Public

ANTHONY MATTHEW CAPOZZOLO
NOTARY PUBLIC-STATE OF NEW YORK
NO. 02CA6324744
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES 05-11-2019

4

# EXHIBIT 1

Case 2:17-cv-05592 Document 1 Filed 07/31/17 Page 49 of 53 PageID: 442

**Redacted**



**Redacted**

**Redacted**



**Redacted**

**Redacted**

# EXHIBIT 2

**Redacted**

**Redacted**

**Redacted**

**Redacted**

**Redacted**

**Redacted**

**Redacted**

**Redacted**

# EXHIBIT 3





**March 23, 2017 – Modny Prigovor (Модный Приговор) – Archived Broadcast**





**March 22, 2017 – Kontrolnaya Zakupka (Контрольная Закупка) – Archived Broadcast**





**March 24, 2017 – Chrezvychaynoye Proisshestviye (Чрезвычайное Происшествие) – Live Broadcast**





**Comparison of RUTVClub Roku Channel with TVTEKA Roku Channel**

**RUTVClub Roku Channel**



**TVTEKA Roku Channel (INVID9)**



# EXHIBIT 7



# EXHIBIT 8



# EXHIBIT 9





# EXHIBIT 10



Case 2:17-cv-05592-WJM-MF   Document 1-13   Filed 07/31/17   Page 3 of 5 PageID: 142



# EXHIBIT 11

DATE: **March 29, 2017**

TO: Roku Inc.

    12980 Saratoga Avenue, Suite D

    Saratoga, California 95070

    Attn: Copyright Agent

    E-mail: copyright@roku.com

I declare UNDER PENALTY OF PERJURY that:

1. I am the owner, or an agent authorized to act on behalf of the owner, which owner's name is

**Komanda LLC and NTV America** ("IP Owner"), of the following copyrighted work.

Identify, in sufficient detail, the copyrighted work that you claim has been infringed upon, including providing any registration number or other identification, if available. Attach applicable documents, if any.

**See the attached letter from David Guerrero Liston for information about Komanda LLC's and NTV America's respective copyrighted works (the "Letter")**

2. I have a good faith belief that the content described below and being made available to end users of the Company's products is not authorized by the IP owner, its agent, or the law, and therefore infringes the IP Owner's rights:

Identify the content that you claim is infringing the copyright identified above.

**See the attached Letter.**

Where does the alleged infringing material appear? Please provide sufficient information to help us locate the content you are reporting.

**The infringing materials appear on the Roku channels with the following access codes: PMR38 and FLVM3.**

**See the attached Letter for additional information.**

Please describe how the content infringes your or the IP owner's rights (this question may assist us with processing your claim and eliminate the potential need for follow-up questions should your notice be unclear).

**The content is infringing Komanda LLC's and NTV America's respective rights by distributing their respective copyrighted programming without authorization.**

**See the attached Letter for additional information.**

Identify, if possible, information sufficient to permit the Company to notify the channel application developer and/or service provider of the allegedly infringing content.

**See Schedule 1 in the attached Letter.**

3. I acknowledge that this Notice, including my contact information, may be provided to the channel application developer and/or service provider associated with the alleged infringing content.

4. I may be contacted as follows:

My Name: **David Guerrero Liston, Esq.**

My Telephone: **(212) 822-0160**

Company or Other IP Owner (if different from me):

**Lewis Baach pllc Kaufman Middlemiss**
**The Chrysler Building**
**405 Lexington Avenue, 62nd Floor**
**New York, New York 10174**

Email: **david.liston@lewisbaach.com**


Check one of the boxes below.

The information I have provided in this statement is accurate.

I agree: ☑

I disagree: ☐

Electronic or Physical Signature:

  **/s David Guerrero Liston_____**



David Guerrero Liston
212 822 0160
david.liston@lewisbaach.com

March 29, 2017

**VIA EMAIL**

Roku, Inc.
Attn: Douglas Weiss, Esq.
Director, Business & Legal Affairs
150 Winchester Circle
Los Gatos, California 95032

     **Re:    Notice of Copyright Infringement Through Roku Platform**

Dear Mr. Weiss:

     We represent Komanda LLC, ("Komanda") and NTV America ("NTV America") (collectively, the Notifying Parties).  We write to notify you of entities that are using Roku, Inc. ("Roku")'s platform to distribute Komanda's and NTV's content without authorization.

     Komanda is the worldwide copyright holder for certain content that is shown on Russian language television, including content that is shown on the Russian television network, Channel One. Among the programs to which Komanda is the copyright holder are the Russian television programs: Modny Prigovor (Модный Приговор) and Kontrolnaya Zakupka (Контрольная Закупка) (the "Komanda Copyrighted Content").

     NTV America is the exclusive copyright holder in the United States for certain content that is shown on Russian language television, including content that is shown on the Russian television network, NTV.  Among the programs to which NTV America is the copyright holder in the United States is the Russian television program, Sud prisyazhnykh (Суд присяжных) (the "NTV Copyrighted Content").

     Komanda and NTV have launched an investigation to identify parties who are streaming their respective content without authorization.  As a result of that investigation, the Notifying Parties have identified one entity, as set forth in Schedule 1 to this letter (the "Pirate") who is distributing, without authorization, the Komanda Copyrighted Content and the NTV Copyrighted Content.

     The Pirate is rebroadcasting numerous Russian TV networks, including Channel One and NTV America on its respective Roku channels.  The Pirate distributes the programming through the Roku

platform to a subscriber through the live rebroadcast of the Russian TV networks, the archived rebroadcast of the Russian TV networks, and/or through a video on demand library.

Attached to this letter is screenshots that demonstrate the Pirate's use of the Roku platform to distribute the Komanda Copyrighted Content and the NTV Copyrighted Content.

Komanda has not authorized the Pirate, directly or indirectly, to distribute the Komanda Copyrighted Content in any manner whatsoever, including without limitation, the right to distribute the Komanda Copyrighted Content through any web streaming platform such as the Roku platform.

NTV has not authorized the Pirate, directly or indirectly, to distribute the NTV Copyrighted Content in any manner whatsoever, including without limitation, the right to distribute the NTV Copyrighted Content through any web streaming platform such as the Roku platform.

As Komanda and NTV did not authorize the Pirate to distribute the content, it is reasonable to assume that the Pirate is also distributing the content of other rightsholders without their authorization.

In light of the evidence that each of the Pirate is streaming the Komanda Copyrighted Content and the NTV Copyrighted Content without the authorization of Komanda or NTV, we respectfully request that Roku immediately disable the Pirate's channels on the Roku platform as well as on any devices or services offered by Roku.

Please note, that the Pirate operated the Roku channels TVTEKA, INVID9, and DTV12, which were identified in my March 13 and March 20 DMCA notices to Roku. The Pirate has circumvented the removal of its Roku channels INVID9 and DTV12 by creating 2 new channels with Roku access codes PMR38 and FLVM3.

The Pirate's circumvention of Roku's removal of its channels has been flagrant. As you can see in the attached screenshots, the Pirate merely changed the Roku access codes from the disabled channel codes to the new channel codes in the FAQ on the Pirate's website (https://tvteka.com/faq/devices/roku) providing its subscribers with instructions about accessing its Roku channel. The new channels have the same name (TVTEKA) and logo as the original channels.

The Pirate's new channels, which are the subject of this DMCA Notice, are also streaming content from Komanda and NTV. The screenshots attached to this letter were taken on March 28, 2017 from the Pirate's channel with access code FLVM3, and show the Pirate continuing to distribute the Komanda Copyrighted Content and the NTV Copyrighted Content.

Based on these screenshots, which demonstrate the Pirate's circumvention of the removal of the offending channels and the Pirate's continued infringement, we request that you immediately remove the Roku channels with the access codes PMR38 and FLVM3.

In light of the Pirate's egregious actions, we also request that you disable all channels associated with the developer account(s) that distributed the channels with the access codes TVTEKA, INVID9, DTV12, PMR38, or FLVM3 and that you permanently terminate their accounts as being repeat offenders.

We would appreciate if you provide us with confirmation that Roku has taken the requested actions to prevent the continued use of Roku's services to facilitate the Pirate's infringement of the Komanda Copyrighted Content and the NTV Copyrighted Content.

Please do not hesitate to contact me at 212-822-0160 or david.liston@lewisbaach.com if you have any questions or if there is any additional information we can provide to you.

Respectfully submitted,

David Guerrero Liston

cc:    Alex G. Patchen
       Anthony M. Capozzolo
       Ari J. Jaffess

## __Schedule 1__

1. __TVTEKA__
   Roku Channel Access Codes – PMR28, FLVM3
   Original Roku Channel Access Codes –  INVID9, TVTEKA,
   DTV12
   c/o ARIEL IMPEX LP
   Franz-Joseph-Str. 11
   80801 Munich, Germany

TVTEKA Website – Changed to provide new Roku channel access codes in response to DMCA Notice



Original TVTEKA Website



Adding TvTeka with channel code FLVM3







Showing new (and old) TvTeka



TVTeka
Roku Access Code –
FLVM3

March 28, 2017 – Sud prisyazhnykh (Суд присяжных) – NTV Live Broadcast





March 28, 2017 – Modny Prigovor (Модный Приговор) – Live Broadcast





March 28, 2017 – Kontrolnaya Zakupka (Контрольная Закупка) – Archived Broadcast





# EXHIBIT 12

Redacted

| | |
|---|---|
| **From:** | ruth85@blueisp.link ruth85@blueisp.link <ruth85@blueisp.link> |
| **Sent:** | Thursday, March 30, 2017 12:32 PM |
| **To:** | Copyright |
| **Subject:** | Counter-Notice Regarding Alleged Copyright Infringement |

DATE: March 30, 2017

TO: Roku, Inc.

150 Winchester Circle

Los Gatos, California 95032

Attn: Copyright Agent

Email: copyright@roku.com

I declare UNDER PENALTY OF PERJURY that:

1. I am the individual or a representative of the entity identified in the Notice of Alleged Copyright Infringement dated March 29, 2017 and referring to content located at:

Roku channel with the access code FLVM3

2. I have a good faith belief that removal or disablement of the content described above was a mistake, the material was misidentified and/or that the content described above does not infringe the copyright of the IP Owner. In the space below, I identify the reasons I believe that my content does not violate any rights as claimed in the Notice.

3. I consent to the jurisdiction of the United States District Court for the jurisdiction in which my address, set forth below, is located or, if I reside outside the United States, I consent to the jurisdiction of the United States District Court located in the Northern District of California. I agree to accept service of process from the Complainant.

4. I acknowledge that this Counter-Notice, including my contact information, may be provided to the Complainant.

5. I may be contacted at:

My Name: Ruth J. Payton

Telephone: 281-875-3902

My Address: 4421 Gambler Lane, Houston TX, 77060

Email: ruth85@blueisp.link

Check one of the boxes below.

The information I have provided in this statement is accurate.

I agree: x

I disagree: □

Electronic or Physical Signature:

 s/ Ruth J. Payton

# EXHIBIT 13

Redacted

| | |
|---|---|
| **From:** | sammed@blueisp.link sammed@blueisp.link <sammed@blueisp.link> |
| **Sent:** | Thursday, March 30, 2017 5:40 PM |
| **To:** | Copyright |
| **Subject:** | Counter-Notice Regarding Alleged Copyright Infringement |

DATE: 31 March 2017

TO: Roku, Inc. 150 Winchester Circle Los Gatos, California 95032

Attn: Copyright Agent

Email: copyright@roku.com

I declare UNDER PENALTY OF PERJURY that:

1. I am the individual or a representative of the entity identified in the Notice of Alleged Copyright Infringement dated 29 March 2017 and referring to content located at Roku channel "PMR38"

2. I have a good faith belief that removal or disablement of the content described above was a mistake, the material was misidentified and/or that the content described above does not infringe the copyright of the IP Owner. In the space below, I identify the reasons I believe that my content does not violate any rights as claimed in the Notice.

3. I consent to the jurisdiction of the United States District Court for the jurisdiction in which my address, set forth below, is located or, if I reside outside the United States, I consent to the jurisdiction of the United States District Court located in the Northern District of California. I agree to accept service of process from the Complainant.

4. I acknowledge that this Counter-Notice, including my contact information, may be provided to the Complainant.

5. I may be contacted at:

My Name: Samuel Medina

Telephone: 2508236279

My Address: 4810 Blanshard, Victoria BC V8W 2H9

Email: sammed@blueisp.link

Check one of the boxes below.

The information I have provided in this statement is accurate.

I agree: V

I disagree: ☐

Electronic or Physical Signature:

 Samuel Medina

# EXHIBIT 14



From: Partner Management [mailto:partner@tvteka.com]
Sent: Saturday, April 01, 2017 1:46 PM
To: Copyright <copyright@roku.com>
Subject: Counter-Notice Regarding Alleged Copyright Infringement

DATE: April 1, 2017

TO: Roku, Inc.
150 Winchester Circle
Los Gatos, California 95032
Attn: Copyright Agent
Email: copyright@roku.com

I declare UNDER PENALTY OF PERJURY that:

1. I am the individual or a representative of the entity identified in the Notice of Alleged Copyright Infringement dated
March 13, 2017 and referring to content located at Roku channel "TVTEKA".

1

2. I have a good faith belief that removal or disablement of the content described above was a mistake, the material was misidentified and/or that the content described above does not infringe the copyright of the IP Owner. In the space below, I identify the reasons I believe that my content does not violate any rights as claimed in the Notice.

3. I consent to the jurisdiction of the United States District Court for the jurisdiction in which my address, set forth below, is located or, if I reside outside the United States, I consent to the jurisdiction of the United States District Court located in the Northern District of California. I agree to accept service of process from the Complainant.

4. I acknowledge that this Counter-Notice, including my contact information, may be provided to the Complainant.

5. I may be contacted at:

My Name: Ivan Kuznetsov

Email: partner@tvteka.com

Check one of the boxes below.

The information I have provided in this statement is accurate.

I agree: V

I disagree: ☐

Electronic or Physical Signature:

 s/ Ivan Kuznetsov

AO 120 (Rev. 08/10)

| TO: | Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been

filed in the U.S. District Court     United States District Court for the District of New Jersey     on the following

☑ Trademarks or     ☐ Patents.   ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT<br>United States District Court for the District of New Jersey |
|---|---|---|
| PLAINTIFF<br><br>Art Distribution Inc. d/b/a NTV America and Komanda LLC | | DEFENDANT<br><br>Ariel Impex LP; Pinebrook Impex LP; and John Does 1 through 10, |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 4,004,267 | 8/2/2011 | NTV Broadcasting Co. Joint Stock Company |
| 2 | 4,148,232 | 5/29/2012 | NTV Broadcasting Co. Joint Stock Company |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment     ☐ Answer     ☐ Cross Bill     ☐ Other Pleading | | |
|---|---|---|---|
| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

Copy 1—Upon initiation of action, mail this copy to Director     Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director     Copy 4—Case file copy

AO 121 (6/90)

| TO: | |
|---|---|
| **Register of Copyrights**<br>**Copyright Office**<br>**Library of Congress**<br>**Washington, D.C. 20559** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION OR APPEAL**<br>**REGARDING A COPYRIGHT** |

In compliance with the provisions of 17 U.S.C. 508, you are hereby advised that a court action or appeal has been filed on the following copyright(s):

| ☑ ACTION ☐ APPEAL | | COURT NAME AND LOCATION<br>United States District Court for the District of New Jersey<br>50 Walnut Street<br>Newark, NJ 07101 |
|---|---|---|
| DOCKET NO. | DATE FILED | |
| PLAINTIFF<br>Art Distribution Inc. d/b/a NTV America and Komanda LLC | | DEFENDANT<br>Ariel Impex LP; Pinebrook Impex LP; and John Does 1 through 10, |

| COPYRIGHT<br>REGISTRATION NO. | TITLE OF WORK | AUTHOR OR WORK |
|---|---|---|
| 1 | See attached Exhibit 1 | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above-entitled case, the following copyright(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| COPYRIGHT<br>REGISTRATION NO. | TITLE OF WORK | AUTHOR OF WORK |
| 1 | | |
| 2 | | |
| 3 | | |

In the above-entitled case, a final decision was rendered on the date entered below. A copy of the order or judgment together with the written opinion, if any, of the court is attached.

| COPY ATTACHED<br>☐ Order ☐ Judgment | WRITTEN OPINION ATTACHED<br>☐ Yes ☐ No | DATE RENDERED |
|---|---|---|
| CLERK | (BY) DEPUTY CLERK | DATE |

DISTRIBUTION:
1) Upon initiation of action, mail copy to Register of Copyrights
2) Upon filing of document adding copyright(s), mail copy to Register of Copyrights
3) Upon termination of action, mail copy to Register of Copyrights
4) In the event of an appeal, forward copy to Appellate Court
5) Case File Copy

## Exhibit 1 to AO-121

| COPYRIGHT REGISTRATION NO. | TITLE OF WORK | AUTHOR OF WORK |
|---|---|---|
| 1. n/a | DAVAI POGENIMSYA (ДАВАЙ ПОЖЕНИМСЯ) | |
| 2. n/a | MODNY PRIGOVOR (МОДНЫЙ ПРИГОВОР) | |
| 3. n/a | SEGODNYA VECHEROM (СЕГОДНЯ ВЕЧЕРОМ) | |
| 4. n/a | KONTROLNAJA ZAKUPKA (КОНТРОЛЬНАЯ ЗАКУПКА) | |
| 5. | LUCHSHE VSEKH (ЛУЧШЕ ВСЕХ) | |
| 6. n/a | IDEALNY REMONT (ИДЕАЛЬНЫЙ РЕМОНТ) | |
| 7. n/a | FIDEL' KASTRO, KUBA-LYUBOV' MOYA (ФИДЕЛЬ КАСТРО, КУБА-ЛЮБОВЬ МОЯ) | |
| 8. n/a | BEZ STRAKHOVKI (БЕЗ СТРАХОВКИ) | |
| 9. n/a | NA NOCH' GLYADYA (НА НОЧЬ ГЛЯДЯ) | |
| 10. n/a | PROZHARKA (ПРОЖАРКА) | |
| 11. n/a | DETEKTIV PASEČNIK (ДЕТЕКТИВ ПАСЕЧНИК) | |
| 12. n/a | MESTO VSTREČI (МЕСТО ВСТРЕЧИ) | |
| 13. n/a | VOZVRAŠENIE MUHTARA (ВОЗВРАЩЕНИЕ МУХТАРА) | |
| 14. n/a | SEGODNJA (СЕГОДНЯ) | |
| 15. n/a | GOVORIM I POKAZYVAYEM (ГОВОРИМ И ПОКАЗЫВАЕМ) | |
| 16. n/a | ULICY RAZBITYH FONAREJ (УЛИЦЫ РАЗБИТЫХ ФОНАРЕЙ) | |
| 17. n/a | UCHITEL' V ZAKONE (УЧИТЕЛЬ В ЗАКОНЕ) | |
| 18. n/a | CHREZVYCHAYNOYE PROISSHESTVIYE (ЧРЕЗВЫЧАЙНОЕ ПРОИСШЕСТВИЕ) | |

David G. Liston
Ronald Abramson
Anthony M. Capozzolo
Ari J. Jaffess
**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel:  (212) 826-7001

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ART DISTRIBUTION INC. d/b/a NTV AMERICA and KOMANDA LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ARIEL IMPEX LP; PINEBROOK IMPEX LP; and JOHN DOES 1 through 10, <br><br> Defendants. | Case No.: 17-cv-5592 <br><br><br><br><br><br> **PLAINTIFF KOMANDA LLC'S RULE 7.1 STATEMENT** |

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff Komanda LLC

hereby states that it is wholly owned by the non-public entity, Legenda Project Group LLC.

Dated: July 31, 2017

Respectfully submitted,

LEWIS BAACH KAUFMANN MIDDLEMISS PLLC

By: ___*/s/* David G. Liston____

David G. Liston
Ronald Abramson
Anthony M. Capozzolo
Ari J. Jaffess
The Chrysler Building
405 Lexington Avenue, 62nd Floor
New York, NY  10174
Tel: (212) 826-7001

*Attorneys for Plaintiffs, Art Distribution Inc. d/b/a*
*NTV America and Komanda LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2017, I electronically filed PLAINTIFF KOMANDA LLC'S RULE 7.1 STATEMENT with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/* David G. Liston_____
David G. Liston

David G. Liston
Ronald Abramson
Anthony M. Capozzolo
Ari J. Jaffess
**Lewis Baach Kaufmann Middlemiss pllc**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 826-7001

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ART DISTRIBUTION INC. d/b/a NTV AMERICA and KOMANDA LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ARIEL IMPEX LP; PINEBROOK IMPEX LP; and JOHN DOES 1 through 10, <br><br> Defendants. | Case No.: 17-cv-5592 <br><br><br><br><br> **PLAINTIFF ART DISTRIBUTION INC. D/B/A NTV AMERICA'S RULE 7.1 STATEMENT** |

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff Art Distribution

Inc. d/b/a NTV America, hereby states that it has no parent company.

Dated: July 31, 2017

Respectfully submitted,

LEWIS BAACH KAUFMANN MIDDLEMISS PLLC

By: ___/s/ David G. Liston____

David G. Liston
Ronald Abramson
Anthony M. Capozzolo
Ari J. Jaffess
The Chrysler Building
405 Lexington Avenue, 62nd Floor
New York, NY  10174
Tel: (212) 826-7001

*Attorneys for Plaintiffs, Art Distribution Inc. d/b/a*
*NTV America and Komanda LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 31, 2017, I electronically filed PLAINTIFF ART DISTRIBUTION INC. D/B/A NTV AMERICA'S RULE 7.1 STATEMENT with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ David G. Liston_____
David G. Liston